320 P.2d 747

A. H. HEYDE and Catherine M. Heyde, his wife, Plaintiffs-Appellants and Cross-Appellees,

v.

STATE SECURITIES, Inc., Defendant-Appellee and Cross-Appellant.

No. 6287.

Supreme Court of New Mexico.

Jan. 14, 1958.

McKenna & Sommer, Joseph A. Sommer, and Thomas F. McKenna, Santa Fe, for appellants.

Donnan Stephenson, Matias A. Zamora, Santa Fe, for appellees.

LUJAN, Chief Justice.

Plaintiffs-appellants brought their action by declaratory judgment, claiming a landlords lien and seeking adjudication of their claim for $1,950 from proceeds of the sale of personalty belonging to their lessee and held by defendant-appellee. The appellee counterclaimed for $3,000 as an amount due under a contract between lessor and lessee on a promise to repay for improvements made by lessee and assigned to appellee. The trial judge gave judgment on the basis of appellee's counterclaim and allowed setoff against appellants, resulting in a net judgment against appellants in the sum of $800 after allowing appellants attorney's fees of $250. Appellee as cross-appellant also appeals from the allowance of attorney's fees.

In December, 1950, the Tom Edwards Motor Company, Inc., leased certain premises in Santa Fe, New Mexico, to Louis Stiner. The lease called for monthly payments of $650 except that in case the premises could be refinanced on a more favorable basis the rent would be reduced'

to $550 per month. In August, 1952, a contract and amendment of the lease was executed providing that the lessee would make improvements to the building costing not less than $8,000 and modifying the lease to provide for payments of $650 without possible reduction. It was also provided that lessor would pay lessee $3,000 for the improvements when he vacated the premises. Appellee obtained a chattel mortgage on fixtures owned by lessee. Subsequently the lessee defaulted on payment of rent, vacated the premises which were then leased to others, and by stipulation the rental due lessor was fixed at $1,950.

Appellants charge error on the grounds that where a lessee is in default he cannot enforce an agreement by lessor to pay for improvements; that the covenant of the lessor to pay for improvements of lessee is not one running with the land so as to bind a subsequent transferee of the lessor; that there was no finding or evidence that appellants received the property of lessor corporation so as to hold appellants liable to pay the corporation's debt under the covenant to repay; and that a complaint for conversion will not support a judgment adjudicating ownership of property in the complainant with a right to remove.

They argue that where a lessee is in default on his covenant to pay rent that he cannot enforce an agreement by the lessor to pay for improvements. The lease provided for termination at any time on non-payment of rent. Subsequent to execution of the lease and prior to lessee's default, the parties entered into a contract and amendment of lease which provided in part:

"4. In the event that Second Party does not exercise his option to renew the aforesaid lease between the parties hereto for a second period of five years, to commence January 1, 1956, as provided for in said lease, then and in that event, the parties of the First Part agree to pay to the Party of the Second Part in partial repayment of the construction cost of the structure, the sum of Three Thousand Dollars (3,000.00) and no more, *at the time he vacates said realty*." (Emphasis supplied.)

The original lease was also modified as to the monthly payments due under the lease. From a possible reduction from $650 to $550 the lessee agreed to pay a straight $650 monthly.

▇ In the view we take of the two instruments the contract for improvements and repayment in the sum of $3,000 was independent of the lessee's duty to pay rent, and was due whenever the lessee vacated the premises in case he did not decide to renew his lease. This contract was made subsequent to the lease and is not ambiguous. As stated in 32 Am.Jur., Landlord & Tenant, Section 127, at page 132:

"* * * In the absence of ambiguity in the provisions of a lease, courts

will enforce the instrument in accordance with its plain language, regardless of the construction put upon it by the parties."

The trial court found as a fact that the lessee did not exercise his option to renew. This fact is not disputed and under terms of the contract to improve the premises and for repayment, the $3,000 provided for became due when the lessee vacated the premises. This promise to repay was not dependent on the lessee's promise to pay rent. The promises are separate and independent. One occurs in a lease and the other in a subsequent contract. Other than providing for modification of rental payments the two instruments are unrelated. See Glaser v. Dannelley, 23 N.M. 593, 170 P. 63, in which we said:

"Where a contract contains mutual promises to pay money or perform some other act, and the time for performance for one party is to, or may, arise before the time for performance by the other, the latter promise is an independent obligation."

Appellants next argue that the covenant of lessor to repay for improvements is not a covenant running with the land and enforceable against appellants as transferrers of the original lessor. We are not impressed by technical arguments based on the rule in Spencer's case. The original lessor, Tom Edwards Motor Co., Inc., of which appellants owned all the stock except one share held in trust for them, conveyed to appellants as individuals by warranty deed the premises in question. The complaint states:

" * * * the plaintiffs became the lessors of Louis C. Stiner and remained his lessor until the termination of said lease, as modified."

We doubt that had corporate law been established in the days of Spencer's case that the rule would have been applied in the transfer of property from a corporate body owned by a plaintiff to that plaintiff. In any case substantial justice requires that we lift the veil and take a peek. When we do, lo and behold, the corporate person and the appellants are one and the same. Its "button button whose got the button" when liabilities are concerned, but "here I am papa" when benefits are forthcoming. We hold that there was sufficient privity between the parties to the contract for repayment for improvements to bind appellants and make them liable. See, Sections 51–7–4 and 51–7–5 of 1953 Compilation; Ballantine (Corporations) Section 122. Having so decided we need not consider the problem of "covenants running with the lands" nor appellants' third point that there was not any evidence that appellants had received the corporate property. The transfer of the premises involved in the lease from the corporation to appellants is sufficient evidence.

■ We do not understand the basis for appellants' contention that a complaint in conversion will not support a judgment adjudicating ownership of property in the complainant with a right to remove. All the evidence indicates that appellants did not claim any interest in the personal property involved nor deny appellee's right to remove. Accordingly, appellants were not prejudiced by the ruling of the trial court and are without standing to complain at this point.

■ The final point argued involves the allowance of attorney's fees and refusal of the trial court to allow expenses of appellants as witnesses from Denver, Colorado, to Santa Fe, New Mexico. The lease provided for costs and attorney's fees in the event it became necessary to enforce covenants therein. It was stipulated that appellants were entitled to $1,950.00 as rent due. However, to secure this amount it became necessary to bring court action and contest appellee's counterclaim. Appellee as assignee of the contract for repayment for improvements does not contest this award and contends the court did not err in allowing reasonable attorney's fees. We agree.

■ Neither can we say that the court erred in refusal to allow recovery of witnesses' expenses. The lease was executed in Santa Fe, New Mexico, and appellants afterwards moved to Denver, Colorado.

Suppose they had moved to Paris, France? Surely it was not in the contemplation of the parties to pay expenses under those circumstances. The award of the court for attorney's fees seems reasonable under circumstances of this case.

■ Cross-appellant, as chattel mortgagee, objects to the award of any attorney's fees. However, attorney's fees were awarded to appellants as provided for in the lease. Cross-appellant as chattel mortgagee was in no position to complain of the award, and as assignee of the contract to repay for improvements, did not complain but rather contended that the award was reasonable.

■ Appellee and cross-appellant's argument that appellants are not provided a landlord's lien under § 61–3–4 of 1953 Compilation on the grounds that "house" does not include a commercial building is not convincing. "House" has many meanings. See, Dees v. Dismuke, 30 N.M. 528, 240 P. 198, and In re Frick Book & Stationery Store, 38 N.M. 120, 28 P.2d 660, involving liens on business establishments.

■ Failure of appellee to plead "bona fide purchaser" as a defense would not estop him from denying validity of the landlord's lien as provided in the lease. See, New Mexico Rules of Civil Procedure, Rule 21–1–1(8). Further, the appellee took his assignment of the promise to repay for improvements subject to all.

defenses lessor might have. This rule is so well settled that it needs no authoritative support. Consequently, whether the appellants enforced the covenant for rent in default under a landlord's lien or as an offset to the covenant to repay for improvements is immaterial. It was properly put in evidence as a defense to the counterclaim.

Finding no reversible error, the judgment will be affirmed.

It is so ordered.

McGHEE and COMPTON, JJ., concur.

SADLER and KIKER, JJ., not participating.