428 P.2d 617

**BELL TELEPHONE LABORATORIES, IN-
CORPORATED and Douglas Aircraft Com-
pany, Inc., Plaintiffs-Appellants and Cross-
Appellees,**

v.

**BUREAU OF REVENUE of the State of
New Mexico, Charles C. Brunacini, Com-
missioner of Revenue, and Carlos Trujillo,
Director, School Tax Division, Defendants-
Appellees and Cross-Appellants.**

No. 7955.

Supreme Court of New Mexico.

Nov. 28, 1966.

Appeal Dismissed June 12, 1967.
See 87 S.Ct. 2111.

Rodey, Dickason, Sloan, Akin & Robb, William C. Schaab, Albuquerque, for appellants.

Boston E. Witt, Atty. Gen., Joel M. Carson, Asst. Atty. Gen., for appellees.

## OPINION

WOOD, Judge, Court of Appeals.

This appeal involves the Emergency School Tax Act (§§ 72–16–1 to 72–16–47, N.M.S.A.1953). The tax was computed under § 72–16–4.9, N.M.S.A.1953. BTL (Bell Telephone Laboratories, Incorporated) paid the tax for the period March 27, 1961, to August 25, 1963. DAC (Douglas Aircraft Company, Inc.) paid the tax for the period January 1, 1960, to September 30, 1963. The payments were protested.

Proceeding under § 72–16–28, N.M.S.A. 1953 (now repealed), the plaintiffs sought to recover the tax paid. The trial court found the plaintiffs were not entitled to recover the tax so paid, found that DAC was entitled to a refund of the penalty assessed against DAC under § 72–16–22, N.M.S.A. 1953 (now repealed), and except for re-

fund of the penalty, dismissed the complaint with prejudice.

Three issues require a decision: (1) whether plaintiffs are engaged in business under the terms of our statute, (2) whether there has been a violation of the due process requirements of the Fourteenth Amendment to the Constitution of the United States and article II, § 18 of the Constitution of New Mexico, and (3) whether the tax is in violation of article I, § 8 of the Constitution of the United States—this section giving the Congress the power to regulate commerce among the states.

■ DAC also asserts that it is not liable for any tax prior to April 1, 1961. It claims that § 72–16–5, N.M.S.A.1953, as it existed prior to that date, unconstitutionally discriminated against persons dealing with the federal government. DAC did not request a finding of fact on this issue, nor did the trial court rule on this issue. Accordingly, it is not an issue on this appeal. Section 21–2–1(20)(2), N.M.S.A. 1953; In Re Reilly's Estate, 63 N.M. 352, 319 P.2d 1069.

The United States Department of Army contracted with Western Electric Company, Inc. for the design and development of a missile system. BTL, as an associate of Western Electric Company, Inc., performs Western's obligations as prime contractor. BTL's work consists of design and development of the entire system.

Under purchase orders issued by BTL, DAC works on the design and manufacture of a part of the system. DAC's part pertains to test models of missiles and equipment for their handling and launching.

In the performance of their respective work, BTL and DAC conduct developmental tests of the system and its components. Large-scale tests involving the firing of missiles are conducted in isolated locations for reasons of safety. BTL and DAC have a choice in the location to be used. The choice depends upon the complexity of the test, the nature of the data required and the capabilities and limitations of the location. White Sands Missile Range in New Mexico is selected for tests requiring complete ground instrumentation and recovery of the missile for examination after firing.

BTL and DAC conducted tests in New Mexico on an intermittent basis from 1946 until the early 1950's and on a continuing basis thereafter. Employees of BTL and DAC are assigned to New Mexico for the purpose of conducting the tests.

BTL's New Mexico testing involves the following: the missile, its launch and handling equipment, the guidance system, radars, data collection equipment and other components of the system which are shipped to New Mexico. The components are assembled in New Mexico. The missile is launched. Performance of the system is recorded by telemetry and other data collection procedures. The data are cursorily examined in New Mexico. Data relating to the performance of the guidance system and radars are then sent to BTL's New Jersey laboratory for reduction and analysis.

DAC's New Mexico testing involves the following: the several sections of the missile and all launching and handling equipment are shipped to New Mexico. The components are assembled in New Mexico, necessary adjustments are made and the missile is prepared for firing. Performance of the missile in flight is recorded by telemetry and other data collection procedures. Such data are cursorily examined in New Mexico. Data relating to the missile and its launching and handling equipment are then sent to DAC's California plant for reduction and analysis.

Plaintiffs are not New Mexico corporations. Neither company maintains an office in New Mexico. The contract and the purchase order were negotiated and entered into outside New Mexico.

Most of the work done pursuant to the contract and purchase order is done outside of New Mexico. Much of the necessary testing is done outside New Mexico.

The Army furnishes BTL with temporary headquarters for use in connection with the

New Mexico tests and BTL furnishes DAC temporary headquarters for the same purpose. The only property of the plaintiffs that is involved is miscellaneous personal property used in connection with the tests. Their employees are in New Mexico only for the tests; however, their average stay is from two to four years.

Apart from their New Mexico testing activities, plaintiffs do not hold themselves out as engaged in business in New Mexico. They do not advertise, sell or distribute goods in New Mexico, nor attempt to obtain any other business in New Mexico.

DAC bills BTL for its work. Western bills the government for BTL's work. The total of bills submitted by both plaintiffs includes costs and fees payable due to activities within New Mexico. The bills rendered do not segregate or attribute any part of the costs or fees to activities within New Mexico or any other state. However, the amount of New Mexico payrolls, some material costs and some items of indirect costs incurred in New Mexico are ascertainable from the records of the plaintiffs.

DAC's tax was computed on the amount of its payroll expense in New Mexico, its payroll tax on the New Mexico payroll plus 6% of the total of these two items. The 6% is estimated to be the fee earned thereon. BTL's tax was computed on the same basis except that nothing was included as fee. The parties stipulated that this computation was neither arbitrary nor unreasonable if there was a basis for making any allocation to New Mexico of amounts received under the contract and purchase order. They further stipulated that neither California nor New Jersey levy any sales or gross receipts tax on the proceeds of the contract or the purchase order.

Plaintiffs contend that they are neither "engaged" in business nor "doing business" in New Mexico and therefore our tax statute is not applicable. Section 72–16–2, N.M.S.A.1953, defines these terms as follows:

"F. 'Business' includes all activities or acts engaged in, personal, profession-al, and corporate, or caused to be engaged in with the object of gain, benefit or advantage either direct or indirect.

"G. 'Engaging,' when used with reference to engaging or continuing in a business or profession, includes the exercise of corporate or franchise power, but it does not include occasional and isolated sales, or transactions by a person who does not hold himself out as engaged in business."

■ While the New Mexico testing was at the White Sands Missile Range, no question is raised as to federal jurisdiction over that range. The physical testing occurred within New Mexico. For the dates included within the tax levy, the testing was on a continuous basis. Plaintiffs were doing what they were authorized to do under the contract and purchase order and as often (continuously) as the circumstances demanded. They were "engaged" in an activity in New Mexico. Besser Company v. Bureau of Revenue, 74 N.M. 377, 394 P.2d 141.

■ If the activity is for gain, benefit or advantage, either direct or indirect, it is "business" within the statutory definition. Plaintiffs billed for and were paid for their New Mexico activities. Such payments were a "benefit" within the definition of that term. Webster's Third New International Dictionary; Black's Law Dictionary, Fourth Edition. Plaintiffs were engaged in business within the meaning of the statute.

The claim of violation of due process is that New Mexico "may not constitutionally exercise tax jurisdiction over a person whose only contact with the state is research for use elsewhere." Plaintiffs rely on Seismograph Service Corp. v. Bureau of Revenue, 61 N.M. 16, 293 P.2d 977. That case did not deal with the due process issue.

In Besser Company v. Bureau of Revenue, supra, this court quoted with approval from Wisconsin v. J. C. Penney Co., 311 U.S. 435, 61 S.Ct. 246, 85 L.Ed. 267, 130

A.L.R. 1229, on the question of due process. In determining due process we look to see:

"* * * whether the taxing power exerted by the state bears fiscal relation to protection, opportunities and benefits given by the state. The simple but controlling question is whether the state has given anything for which it can ask return. * * *"

Other decisions hold that due process is met by "some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax." General Motors Corp. v. Washington, 377 U.S. 436, 84 S.Ct. 1564, 12 L.Ed.2d 430; American Oil Co. v. Neill, 380 U.S. 451, 85 S.Ct. 1130, 14 L.Ed.2d 1; Miller Bros. Co. v. State of Maryland, 347 U.S. 340, 74 S. Ct. 535, 98 L.Ed. 744.

■ The New Mexico tax is on the privilege of conducting business. Dikewood Corp. v. Bureau of Revenue, 74 N.M. 75, 390 P.2d 661. It is measured by gross receipts of the business. Section 72–16–4.1, N.M.S.A.1953. The receipts taxed were receipts based on activities within New Mexico.

The link, or connection, between New Mexico and the transactions it seeks to tax is that all the transactions occurred within New Mexico. What the state gave is the opportunity to engage in those transactions. All the state is doing is seeking a return on those transactions. The taxing power exerted bears a direct fiscal relation to the activities resulting from the opportunity afforded. Imposition of the tax does not violate the requirements of due process.

Plaintiffs assert that their activities in New Mexico constitute either (a) interstate commerce exclusively or (b) an inseparable combination of interstate and intrastate commerce. In either case, they claim the tax may not be constitutionally applied because of the commerce clause. Spector Motor Service v. O'Connor, 340 U.S. 602, 71 S.Ct. 508, 95 L.Ed. 573, and Michigan-Wisconsin Pipe Line Co. v. Calvert, 347 U.S. 157, 74 S.Ct. 396, 98 L.Ed.

583, are representative of the cases cited by plaintiffs in support of their assertions.

■ If there is an intrastate incident sufficiently disjoined from interstate commerce, that incident is open to state taxation. Albuquerque Broadcasting Co. v. Bureau of Revenue, 51 N.M. 332, 184 P.2d 416, 11 A.L.R.2d 966. Thus, if the facts show that which is taxed to be a local business activity, the tax has been upheld. Western Live Stock v. Bureau of Revenue, 303 U.S. 250, 58 S.Ct. 546, 82 L.Ed. 823, 115 A.L.R. 944; Besser Company v. Bureau of Revenue, supra.

General Motors Corporation v. Washington, supra, reviews decisions applying the commerce clause to various types of state taxes. Generally, state property, franchise and income taxes have been upheld. Local taxes measured by gross receipts from interstate commerce have not fared as well as the other types of tax because of "the danger that such taxes can impose cumulative burdens upon interstate transactions which are not present to local commerce." No issue of "cumulative burdens" or "multiple taxation" is involved in this appeal— it being stipulated that neither California nor New Jersey levy a tax on the gross receipts of the contract or purchase order. We, therefore, expressly do not consider the question of multiple taxation.

The General Motors case involved the constitutional validity, under the commerce and due process clauses, of a Washington tax. This tax was imposed upon the privilege of engaging in business within the state. The receipts on which the tax was levied were unapportioned between in-state and out-of-state activities. Both local and interstate activities were taxed because General Motors failed to prove the interstate activities it claimed to be exempt. In upholding the tax under the commerce clause, the opinion states:

"* * * [I]t is well established that taxation measured by gross receipts is constitutionally proper if it is fairly apportioned.

"A careful analysis of the cases in this field teaches that the validity of the tax, rests upon whether the State is exacting a constitutionally fair demand for that aspect of interstate commerce to which it bears a special relation. For our purposes the decisive issue turns on the operating incidence of the tax. In other words, the question is whether the State has exerted its power in proper proportion to appellant's activities within the State and to appellant's consequent enjoyment of the opportunities and protections which the State has afforded. Where, as in the instant case, the taxing state is not the domiciliary State, we look to the taxpayer's business activities within the State, i. e., the local incidents, to determine if the gross receipts from sales therein may be fairly related to those activities. * * *"

The court concluded that the Washington tax was levied on a substantial local business in Washington and was constitutionally valid. In so doing, it did not distinguish intrastate business from interstate commerce—part of the tax was applied to interstate activity, because General Motors had not shown that its activities within the state were incidents that the state could not reach. The test stated was whether Washington had exacted a "fair demand for that aspect of interstate commerce to which it bears a special relation."

Justice Brennan dissented in the General Motors case because the tax was not apportioned between in-state and out-of-state activity. His dissent supports the majority opinion that a gross receipts tax on interstate sales is valid if apportioned to the activity within the taxing state. Justice Brennan states:

"* * * [I]f commercial activity in more than one State results in a sale in one of them, that State may not claim as all its own the gross receipts to which the activity within its borders has contributed only a part. Such a tax must be apportioned to reflect the business activity within the taxing State. * *"

Here the tax is levied only upon receipts resulting from plaintiffs' activities within. New Mexico. There is no question of apportionment between in-state and out-of-state activity.

The only question is whether there is an intrastate incident sufficiently disjoined from interstate commerce, or as stated in the General Motors case—whether New Mexico is exacting a fair demand for that aspect of interstate commerce to which it bears a special relation.

New Mexico's special relationship to plaintiffs' interstate operation is the testing done in New Mexico. The tax being based on receipts due to that testing, the demand (tax) is fair. The activities involved in the testing are sufficiently disjoined from the interstate operation so that those activities are a local incident or business activity. The receipts from that activity can be taxed by New Mexico. Compare General Motors Corp. v. Washington, supra. The tax is not prohibited by the commerce clause.

Plaintiffs assert that Seismograph Service Corporation v. Bureau of Revenue, supra, decided the commerce clause issue and requires an opposite result. In that case the company made geophysical surveys for oil in New Mexico pursuant to contracts entered into outside New Mexico. The survey data were taken to Oklahoma for analysis and formulation of opinions for clients who were principally non-resident. The activities in Seismograph are analogous to activities of the plaintiffs in this case. However, in Seismograph, no part of the company's receipts could be definitely declared as receipts from operations in New Mexico. Here, we have a tax levied only on receipts from the New Mexico operation.

Seismograph is not controlling. Interstate activity alone does not decide whether the state can or cannot tax. General Motors Corporation v. Washington, supra. If the local incident is separable from the interstate operation, the state may

tax the gross receipts o: such local incident.

Plaintiffs contend that their activities in this case cannot be a local business activity since the New Mexico testing is only 5% of their total work under the contract and purchase order. They rely on Combustion Engineering v. Arizona State Tax Com'n, 91 Ariz. 253, 371 P.2d 879. We decline to follow a rule that might find a taxable local activity if 15% or 25% of the contract was performed in New Mexico and a nontaxable activity if the performance is 5% or 9% of the contract.

■■ Regardless of the percentages involved, the test under the commerce clause is whether the activity within the state is sufficiently local in character to be considered "disjoined" (Albuquerque Broadcasting Co. v. Bureau of Revenue, supra) or a "local incident" (General Motors Corporation v. Washington, supra). This is a question of fact.

■ The trial court found as a fact that plaintiffs were engaged in a local business activity. The evidence of continuous testing in New Mexico during the periods covered by the tax levy and the evidence of what is involved in that testing support that finding. The fact that the New Mexico testing was a part of an operation involving other states does not destroy the significance of the testing as a local incident within New Mexico—identifiable and capable of being segregated from the interstate operation.

■ Plaintiffs contend that the tax has been improperly imposed upon them because under § 72–16–29, N.M.S.A.1953, the state might institute injunction proceedings to prohibit them from continuing in business until required taxes have been paid. They point out that this injunction procedure could be applied to their interstate operation. They conclude that our tax statute is "open to the objection that it compels the company to pay for the privilege of engaging in interstate commerce." No injunction is involved in this case. The

question of the propriety of injunction proceedings being interjected as a hypothetical situation, a decision concerning such a proceeding would be an advisory opinion. This court does not give advisory opinions.

Additional arguments advanced by plaintiffs have been considered and found not to have merit.

The judgment is affirmed. It is so ordered.

NOBLE, MOISE and COMPTON, JJ., and OMAN, J., Court of Appeals, concur.