525 P.2d 931

**PHARMACEUTICAL MANUFACTURERS ASSOCIATION, a non-profit Delaware corporation, et al., Appellants,**

**v.**

**NEW MEXICO BOARD OF PHARMACY, Appellee.**

**No. 1009.**

Court of Appeals of New Mexico.

May 8, 1974.

Rehearing Denied June 19, 1974.

Certiorari Granted July 25, 1974.

Sutin, J., dissented and filed an opinion.

Dean S. Zinn, Zinn & Donnell, Santa Fe, for appellants.

Turner W. Branch, Frank P. Dickson, Jr., Branch, Dickson, Dubois & Wilson, P. A., Albuquerque, for appellee.

## OPINION

HENDLEY, Judge.

Appellants seek review of certain regulations adopted by the New Mexico Board of Pharmacy. Our standard of review is found in § 67–26–31(C), N.M.S.A.1953 (Repl.Vol.1961, pt. 1, Supp.1973) which states:

"C. Upon appeal, the court of appeals shall set aside the regulation only if found to be:

"(1) arbitrary, capricious or an abuse of discretion;

"(2) contrary to law; or

"(3) against the clear weight of substantial evidence of the record."

Regulations were adopted by the State Board of Pharmacy pursuant to the Drug and Cosmetic Act, § 54–6–26 et seq., N. M.S.A.1953 (Repl.Vol.1962, pt. 2, Supp. 1973), and the Controlled Substances Act, § 54–11–1 et seq., N.M.S.A.1953 (Repl.Vol. 1962, pt. 2, Supp.1973).

A public hearing was held pursuant to § 67–26–29, N.M.S.A.1953 (Repl.Vol.1961, pt. 1, Supp.1973). All appellants participated in the hearing through appellant, Pharmaceutical Manufacturers Association, which is compromised of the producers of approximately ninety-five percent of prescription drugs made and sold in the United States.

The regulations appealed from are as follows:

"ARTICLE 9

"Section 600. MINIMUM STANDARDS FOR MANUFACTURERS AND REPACKAGING FIRMS.

"The following minimum standards shall apply to all manufacturing establishments and repackaging firms for which licenses have been issued by the Board.

"1. All drugs and chemicals used in the manufacturing process or held [sic] sale shall conform to the New Mexico Drug and Cosmetic Act and shall be stored, preserved and disposed of as prescribed by laws regulating the labeling and manufacture of drugs.

"When necessary, and/or according to label requirements, all drugs and chemicals which require refrigeration shall be stored and preserved under proper temperatures.

"2. All manufacturers must conform to current good manufacturing practices as set forth in Title 21, Code of Federal Regulations, Subsection 133.3 to 133.14 inclusive. The definitions and interpretations contained in Section

201 of the Federal Food and Drug Act shall be applicable.

"Section 602. LICENSURE OR REGISTRATION: Wholesale distributor and manufacturer distributor or manufacturer.

"No manufacturer shipping dangerous drugs into New Mexico or who sells or distributes dangerous drugs in this state through any person or media, other than a wholesaler who has obtained a license, shall conduct the business of selling or distributing dangerous drugs without obtaining an out-of-state drug license from the board. (Veterinarian drug suppliers are included in this provision).

"Applications for an out-of-state drug distributor's license under this section shall be made on a form furnished by the Board of Pharmacy. The Board may require such information as it deems is reasonably necessary to carry out the purpose of this section.

"This requirement does not include the licensure of a parent corporation of a corporation or division.

"The license fee for manufacturers and wholesale distributors shall be $100.00 and shall be renewed annually before the last day of December of each year.

"No person acting as principal or agent (detail man) for any out-of-state manufacturer, wholesaler or distributor who has not obtained a license from the board, shall conduct the business of selling or distributing dangerous drugs within this state.

"Any person acting as principal or agent for any manufacturer, wholesaler or distributor who is licensed by the Board and who possess or distributes dangerous drugs, shall register as principal or agent for the licensed manufacturer, wholesaler or distributor. There shall be no fee for registration of such agent.

"Registration of persons under this section shall be made on a form furnished by the Board. The Board may require such information as it deems is reasonably necessary to carry out the purpose of this section, including, but not limited to, the name and address of the registrant and the name and address of the manufacturer whose drugs he is selling or distributing.

"The board may deny, revoke, or suspend such person['s] registration for any violation of the state drug laws.

"ARTICLE 12. FEES.

". . .

"Section 808. The fee for a license for a drug manufacturer or wholesale drug dealer shall be one hundred-dollars.

". . .

"ARTICLE 20 CONTROLLED SUBSTANCES

"Section 901. REGISTRATION REQUIREMENTS

"Persons required to register:

"Manufacturers includes repackagers.

"Distributors includes wholesale drug distributors.

"Dispensers includes pharmacies, hospitals, clinics.

"Practitioners includes medical physicians, osteopathic physicians, dentists, veterinarians, podiatrists or other persons authorized to prescribe controlled substances.

"Scientific investigator includes practitioners conducting research, persons other than practitioners authorized to conduct reasearch, analytical laboratories, chemical analysis laboratories, teaching institutions.

"Special projects or demonstrations which bear directly on mis-

use or abuse of controlled substances and includes public agencies, institutions of higher education and private organizations."

## A. *Commerce Clause Violation*

■ Appellants assert that the challenged regulations violate the Commerce Clause. The applicable rules for determining such violation in the present case were stated in Pike v. Bruce Church, Inc., 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970):

". . . Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. Huron Portland Cement Co. v. City of Detroit, 362 U.S. 440, 443, 80 S. Ct. 813, 816, 4 L.Ed.2d 852 [78 A.L.R.2d 1294 (1960)]. If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities. . . ."

See also Bibb v. Navajo Freight Lines, Inc., 359 U.S. 520, 79 S.Ct. 962, 3 L.Ed.2d 1003 (1959); Southern Pacific Co. v. Arizona, 325 U.S. 761, 65 S.Ct. 1515, 89 L.Ed. 1915 (1945); and South Carolina State H. Dept. v. Barnwell Bros., 303 U.S. 177, 58 S.Ct. 510, 82 L.Ed. 734 (1938).

■■ Although different ,rules may apply in the case of taxation of interstate commerce (see Nippert v. City of Richmond, 327 U.S. 416, 66 S.Ct. 586, 90 L.Ed. 760, 162 A.L.R. 844 (1946); Bell Telephone Laboratories v. Bureau of Revenue, 78 N.M. 78, 428 P.2d 617 (1966), appeal dismissed, 388 U.S. 457, 87 S.Ct. 2111, 18 L.Ed.2d 1318 (1967); and Spillers v. Commissioner of Revenue, 82 N.M. 41, 475 P. 2d 41 (Ct.App.1970)), we are not here concerned with taxation. Although the present regulations include a license fee, to cover administrative costs, their primary purpose is the protection of the public from ' dangerous drugs. New Mexico ex rel. McLean v. Denver & R.G.R. Co., 203 U.S. 38, 27 S.Ct. 1, 51 L.Ed. 78 (1906); Busey v. District of Columbia, 138 F.2d 592 (D.C.Cir. 1943). Cf. Askren v. Continental Oil Co., 252 U.S. 444, 40 S.Ct. 355, 64 L.Ed. 654 (1920). That purpose is well within the traditional definition of police power and controls the analysis of this issue. Head v. New Mexico Board of Examiners in Optometry, 374 U.S. 424, 83 S. Ct. 1759, 10 L.Ed.2d 983 (1963); New Mexico ex rel. McLean v. Denver & R.G. R. Co., supra; United Artists Corporation v. James, 23 F.Supp. 353 (S.D.W.Vir. 1938), affirmed 305 U.S. 410, 59 S.Ct. 272, 83 L.Ed. 256 (1939).

■ The state interest in drug control is substantial and ever growing. In the present regulatory system that interest is magnified by a corresponding federal interest. The regulations questioned here, and their authorizing statutes are part of a coordinated state-federal drug abuse prevention system.

Opposing this state benefit is the burden of a fixed fee which might affect small interstate shippers. But the fee is not large and only the manufacturers and wholesale distributors, not salesmen, are required to pay it. Cf. Nippert v. City of Richmond, supra. That small burden does not outweigh the substantial state benefit derived from the control.

■ The questioned regulations also do not discriminate against interstate commerce. The appellant's supplemental brief admits, ". . . that there presently are no drug manufacturers within the state. . . ." Since only one class, out-of-state manufacturers, is affected by the regulation and since all persons in that class are treated equally, there is no discrimination.

## B. *Equal Protection Violation*

■ Appellants contend that § 54–6–41(A)(1), supra, denies equal protection to residents of New Mexico. Again, since

the appellant admits that there are no New Mexico manufacturers there is no factual basis for their claim.

## C. *Due Process Violation*

■ The appellant asserts that the present regulations require licenses ". . . of out-of-state corporations with no contact with New Mexico. . ." in violation of due process. Due process imposes a limitation on state power exercised extra-territorially. In the area of taxation the controlling question is stated at times to be whether there is " . . . some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax." Miller Bros. Co. v. State of Maryland, 347 U.S. 340, 74 S.Ct. 535, 98 L.Ed. 744 (1954).

■ But we are here concerned with the police power (see Section A, supra). State exercise of that power is subject to a somewhat different rule (compare the analysis under the Commerce Clause, Section A, supra). The proper inquiry there " . . . is whether [the state] has taken hold of a matter within her power, or has reached beyond her borders to regulate a subject which was none of her concern because the Constitution has placed control elsewhere." Osborn v. Ozlin, 310 U.S. 53, 60 S.Ct. 758, 84 L.Ed. 1074 (1940).

■ The regulations in this case propose to license only manufacturers or wholesale distributors who sell or distribute dangerous drugs in New Mexico. This state has a legitimate interest in the control of dangerous drugs sold or distributed in this state (see Section A, supra). By regulating these drugs New Mexico has "reached beyond her borders." But "[t]he mere fact that state action may have repercussions beyond state lines is of no judicial significance. . . ." Osborn v. Ozlin, supra. The controlling fact is that New Mexico has not brought ". . . within the orbit of state power matters unrelated to any local interests." Osborn v. Ozlin, supra.

## D. *Statutory Authority*

Appellant argues that "registration" under § 602 is really licensing and that § 54–6–41, supra, gives the Board the power to license only those people who ship dangerous drugs interstate. Detailmen, it is argued, in no way ship drugs. They are state resident "drummers" who show samples but do not deliver.

■ Reviewing courts overturn the administrative interpretation of statute by appropriate agencies only if they are clearly incorrect. 2 Am.Jur.2d Administrative Law § 241 (1962). The objective of the Drug and Cosmetic Act, in general, is to help " . . . establish a closed regulatory system for the legitimate handlers of controlled drugs. . . ." Detailmen do handle controlled drugs, and they are part of the interstate drug shipment operation, even though they do not ship drugs themselves. The interpretation of § 54–6–41, supra, to allow licensing of detailmen is therefore not clearly erroneous.

## E. *No Reasons Stated*

The appellant argues that City of Roswell v. New Mexico Water Qual. Con. Com'n, 84 N.M. 561, 505 P.2d 1237 (Ct. App.1972) was not followed in this case, in that the " ' . . . board [did not] indicate the testimony adopted, the standard followed and the reasoning it used in reaching its conclusion.' . . ." Citing McClary v. Wagoner, 16 Mich.App. 326, 167 N.W.2d 800 (1969).

■ Appellee contends that statements by Board members sufficiently states the reasoning of the Board. We agree as a matter of policy. Formal findings are not required. The only requirements are that the public and the reviewing courts are informed as to the reasoning behind the regulation. The comments of the one Board member regarding illicit drug trafficking suffice in this regard. Further, since those comments were uncontradicted by other Board members we can assume that his reasoning was adopted by the Board.

F. *Against Substantial Evidence*

 Substantial evidence supporting the challenged regulations can be found in the testimony of Mr. Daily, Mr. Brito and Counsel Dickson.

Although there is testimony to the contrary it basically raises the Commerce Clause issues, which were no more dispositive in that hearing than they are in this appeal. The regulations are valid.

Affirmed.

It is so ordered.

LOPEZ, J., concurs.

SUTIN, Judge (dissenting).

I respectfully dissent.

In Heyde v. State Securities, 63 N.M. 395, 399, 320 P.2d 747, 750 (1958) the court said:

In any case substantial justice requires that we lift the veil and take a peek.

*First,* on June 12, 1972, the New Mexico Board of Pharmacy gave notice to The Albuquerque Journal, a newspaper of general circulation in the State, that a public hearing would be held July 19, 1972. The notice stated that "The purpose of the hearing will be the consideration of proposed regulations and amendments to and revisions of existing regulations set forth below:"

\* \* \* \* \* \*

Chapter 23, *Laws of 1967* as amended Drug and Cosmetic Act: Article 9, Section 602.

Chapter 29, *Laws of 1969* as amended, Pharmacy Act: Article 9, Section 602. [Emphasis added].

\* \* \* \* \* \*

The plaintiffs, by notice of appeal, in addition to Article 9, Section 602, challenged the adoption and filing of Article 9, Section 600, and Article 12, Section 608. These two articles were not set forth in the notice. The record on appeal does not disclose whether the articles and section numbers were proposed regulations or amendments to and revisions of existing regulations.

On July 18, 1972, Mr. Brito, the chairman of the public hearing, announced:

The purpose of this meeting today is to provide an opportunity for persons interested to submit data, views or arguments related to *the proposed regulations* pursuant to . . . the Pharmacy Act as amended *1972,* and the Drug and Cosmetic Act as amended, *1972.* [Emphasis added].

A. *Proceedings and record are insufficient to subject matter for review.*

Mr. Daily, a drug inspector for the board, announced that only one new regulation was proposed under the Drug and Cosmetic Act—Article 9, Section 602.

It is clear that the public hearing did not consider the subject matter stated in the notice as provided by law. Section 67–26–29, N.M.S.A.1953 (Repl.Vol. 10, pt. 1, 1973 Supp.).

"Those who are brought into contest with the Government in a quasijudicial proceeding aimed at the control of their activities are entitled to be fairly advised of what the government proposes and to be heard upon its proposals before it issues its final command." Morgan v. United States, 304 U.S. 1, 18, 19, 58 S.Ct. 773, 776, 82 L. Ed. 1129 (1937).

*Second,* the record on appeal does not contain: (1) the proposed regulations to be submitted for consideration at the hearing or whether the regulations were filed under the State Rules Act, or when the regulations were filed; (2) any written notice of the action of the New Mexico Board of Pharmacy as set forth in § 67–26–29, supra, and the notice of the public hearing; (3) any order of the board adopting the regulation in question. The record does not contain any data, views, argument or evidence on Article 9, Section 602, challenged on appeal as provided in § 67–26–29, supra.

Section 67–26–31(A), supra, provides:

Any person who is or may be affected by a regulation *adopted by the board* may appeal to the court of appeals for relief. All appeals shall be upon *the record made at the hearing* by the board and shall be taken to the court of appeals within thirty [30] days *after the filing of the regulation under the State Rules Act*. [Emphasis added].

*Third*, § 54–6–43, N.M.S.A.1953 (Repl. Vol. 8, pt. 2, 1973 Supp.) of the "New Mexico Drug and Cosmetic Act" provides in part:

The board shall conform the regulations promulgated under the New Mexico Drug and Cosmetic Act, in so far as practical with regulations promulgated under the federal act.

The record does not show this compliance.

*Fourth*, the "public hearing" consisted of an informal "mish-mash" of argument, views, letters and memoranda. The hearing was adjourned. What occurred after adjournment is unknown. "We have no indication of what the [board] relied upon as a basis for adopting the regulations. . . . We cannot effectively perform the review authorized . . . unless the record indicates what facts and circumstances were considered and the weight given to those facts and circumstances. We do not hold that formal findings are required. We do hold the record must indicate the reasoning of the [board] and the basis on which it adopted the regulations. The regulations were not adopted in accordance with law. Accordingly, the regulations are set aside." City of Roswell v. New Mexico Water Qual. Con. Com'n, 84 N.M. 561, 565, 505 P.2d 1237, 1241 (Ct. App.1972).

Section 67–9–37(A), N.M.S.A.1953 (Repl.Vol. 10, pt. 1, 1973 Supp.) grants the Pharmacy Board power to "adopt, regularly review and revise rules and regulations necessary to carry out the provisions of the Pharmacy Act . . . after hearings open to the public." Section 67–26–

29, supra, of the Uniform Licensing Act provides for notice and hearing for the adoption of regulations.

In 1969, the legislature adopted the "Administrative Procedures Act." Sections 4–32–1 to 4–32–25, N.M.S.A.1953 (Repl. Vol. 2, 1973 Supp.). Section 4–32–23, supra, makes the Act applicable "to agencies made subject to its coverage by law, or by agency rule or regulation if permitted by law." Five years have passed and the "Administrative Procedures Act" stands alone, inapplicable to any agency, a lost cause in the mire of agency administration. The legislature has a duty to make this Act applicable. Until it is done, the public is not protected, and courts of review are placed in a judicial chicken pox.

In administration hearings, the board is the judge, the prosecutor and the jury. The board is not an impartial arbiter of the contentions of opposing parties. It is the moving party undertaking to support its own proposed regulations. It should educate itself before establishing regulations which have substantial impact on those regulated. It can make decisions without any evidence, without any duty to make findings of fact, or disclose reasons for the action taken. The board is not qualified to determine the legality of its regulations in reaching a decision. There will be cases in which the board will be in doubt as to the sufficiency of the data, the arguments, the views expressed, and the evidence, if any, to adopt regulations. It will be quite in order for the board to draw attention to these matters in arriving at a decision.

From the proceedings and the record, I am not sure we have jurisdiction to review, but Article 9, Section 602, should be declared invalid. This case should be reversed and all matters placed in status quo.

B. *Section 54–6–41(A)(1) is unconstitutional.*

Let us assume that point A, supra, is erroneous. The only challenge on appeal is the constitutionality of § 54–6–41(A)(1)

and Article 9, Section 602, set forth in the majority opinion.

Plaintiffs contend that § 54–6–41(A)(1) of the Drug and Cosmetic Act and regulation 602 promulgated thereunder violate the due process and commerce clauses of the U.S. Constitution by attempting to regulate out-of-state drug manufacturers.

Section 54–6–41(A)(1), N.M.S.A.1953 (Repl.Vol. 8, pt. 2, Supp.1973) reads as follows:

It is unlawful for any person to sell, dispose of or possess any "dangerous drugs," unless they are:

(1) manufacturers or distributors, their agents or employees licensed by the board *to ship* dangerous drugs into the state; . . . [Emphasis added].

It should be noted that this section does not apply to manufacturers or distributors, their agents or employees, who do *not ship* dangerous drugs into the State.

In State v. Martinez, 48 N.M. 232, 235, 149 P.2d 124, 125 (1944), the court said:

Unless the contrary appears, statutory words are presumed to be used in their ordinary and usual sense and with the meaning commonly attributable to them. \* \* \*

Ordinarily the word "ship" means to deliver to a carrier for transportation.

\* \* \* \* \* \*

The word "ship" has a definite meaning, and there is nothing in the context to indicate that it was used in any other sense than that of a delivery by a consignor to a carrier to be delivered at its destination to a consignee.

It is clear that manufacturers or distributors, their agents or employees, can bring dangerous drugs into New Mexico themselves, in their own method of transportation without a license, if delivery is not made by a carrier for transportation into New Mexico. They are not subject to license by the board. They are not affected by Article 9, Section 602, set forth in the majority opinion. They have the right to deliver the dangerous drugs to any person,

firm or corporation in New Mexico free of any violation of § 54–6–41(A)(1), supra.

One out-of-state, unlicensed manufacturer or distributor, its agents and employees, can bring dangerous drugs into New Mexico and deliver them to licensees, but another such manufacturer or distributor, without a license, cannot if it delivers the dangerous drugs to a carrier for transportation into New Mexico.

The question for decision is whether § 54–6–41(A)(1) is discriminatory and denies equal protection of the law when, upon arrival in New Mexico, one truck owned and operated by manufacturer or distributor can be unlicensed, and one truck owned by a common carrier delivering a manufacturer's or distributor's product must be licensed.

In my opinion, the statute is unconstitutional.

The Fourteenth Amendment to the Constitution of the United States reads in part:

No State shall make or enforce any law which shall abridge the privileges and immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny any person within its jurisdiction the equal protection of the laws.

Article II, Section 18 of the New Mexico Constitution reads:

No person shall be deprived of life, liberty or property without due process of law; nor shall any person be denied the equal protection of the laws.

"The denial of equal rights or the imposition of unequal burdens can be pleaded only by those who show that they belonged to the class discriminated against." Pueblo of Isleta v. Tondre & Pickard, 18 N.M. 388, 414, 137 P. 86, 95 (1913).

Where the legislative classification confers benefits on one group and not another, it "cannot be done consistently with the Fourteenth Amendment to the Constitution of the United States." Durand v. Middle

Rio Grande Conservancy Dist., 46 N.M. 138, 146, 123 P.2d 389, 394 (1941). Any attempt by the legislature to create a class within a class of nonresidents violates the Fourteenth Amendment to the Constitution. If persons under the same circumstances and conditions are treated differently, there is discrimination and not classification, even where the registration of a motor vehicle owned by a nonresident is involved. State v. Pate, 47 N.M. 182, 187, 138 P.2d 1006 (1943). See also, Board of Education of Vil. of Cimarron v. Maloney, 82 N.M. 167, 477 P.2d 605 (1970).

It should also be noted that the statute applies only to out-of-state manufacturers. It does not apply to in-state manufacturers. This alone makes the statute unconstitutional. Bourjois, Inc. v. Chapman, 301 U. S. 183, 57 S.Ct. 691, 81 L.Ed. 1027 (1936). This case involves "An Act for the Regulation of Cosmetics." It applied to intrastate commerce. A New York manufacturer was required to obtain registration in Maine. The court said:

> There is no discrimination against interstate commerce, since the regulation applies equally to all preparations, whether manufactured within or without the State of Maine.

The annotation in 25 L.Ed.2d 846, 860 (1971) says:

> In numerous cases, the Supreme Court has suggested that if "discrimination" against interstate commerce was either the purpose or the effect of state or local regulations pertaining to food, such regulations were violative of the commerce clause.

Compare, Head v. New Mexico Board of Examiners in Optometry, 374 U.S. 424, 83 S.Ct. 1759, 10 L.Ed.2d 983 (1962).

It should be noted that the public is adequately protected against any dangerous drugs shipped into New Mexico. Section 54–6–27(E), (G) and (I), supra, prevents any disposition until the dangerous drug is measured and prescribed by a physician.

After delivery into this State, licensing is provided by § 54–6–41(A)(2). In order to lawfully sell, dispose of, or possess any dangerous drugs, distributors, hospitals, nursing homes, clinics, pharmacies and authorized retailers in New Mexico must be licensed by the board. No harm results from declaring § 54–6–41(A)(1) unconstitutional.

C. *Article 9, Section 602, is invalid.*

Article 9, Section 602, provides in part:

> No manufacturer . . . who sells or distributes dangerous drugs in this state through any person or media, . . . shall conduct the business of selling or distributing dangerous drugs without obtaining an out-of-state drug license from the board.

This means that any manufacturer, instate or out-of-state, can sell or distribute dangerous drugs in this State without a license, but it cannot conduct *the business* of selling or distributing dangerous drugs without obtaining an out-of-state drug license from the board. This is a conundrum. But the board has no power to regulate in-state manufacturers.

This article also provides in part:

> The license fee for manufacturers and wholesale distributors shall be $100.00 . . . .

This provision is not applicable to manufacturers and wholesale distributors who do not "ship" dangerous drugs into New Mexico.

Other objections have been raised by appellants with which I agree. But further discussion and analysis is fruitless.