648 P.2d 1185

**STATE of New Mexico, Plaintiff-Appellant,**

v.

**James REAMS and Jesse Fore, Defendants-Appellees.**

**Nos. 5272, 5273.**

Court of Appeals of New Mexico.

Dec. 31, 1981.

Jeff Bingaman, Atty. Gen., Carol Vigil, Asst. Atty. Gen., Santa Fe, for plaintiff-appellant.

Clifford L. Payne, Lovington, for defendant-appellee Fore.

David L. Hoglund, Hobbs, for defendant-appellee Reams.

## OPINION

DONNELLY, Judge.

The State appeals from two orders entered by the District Court of Lea County in separate criminal proceedings, dismissing (1) one count of a criminal information charging defendant Jesse Fore with the unlawful distribution of a controlled substance (quaalude) contrary to the Controlled Substances Act, § 30–31–22 N.M.S.A.1978 (Repl.1980); and (2) two counts of a criminal information charging the defendant James Reams with conspiring to distribute controlled substances (quaalude) contrary to § 30–28–2 N.M.S.A.1978 (Supp.1981), and the Controlled Substances Act. The appeals in the two cases have been consolidated before this court and involve the same basic facts and legal issues.

Two different statutory enactments purport to declare the possession or sale of quaalude a criminal offense. Although neither act specifically mentions quaalude or its generic derivative, methaqualone, both acts invest the State Board of Pharmacy

with the authority to designate additional drugs or controlled substances which are covered under such acts. The Controlled Substances Act, § 30–31–22, declares that intentional distribution or possession with intent to distribute a controlled substance enumerated in Schedule II of the act is, for the first offense, a third degree felony. Similarly, the New Mexico Drug and Cosmetic Act, as amended, § 26–1–16 A, N.M. S.A.1978 (Supp.1980), prohibits sale, disposal of or possession of any dangerous drugs, as defined by the act, by any person unless licensed by the State Board of Pharmacy. Under the latter act violation constitutes a petty misdemeanor for the first offense. Section 26–1–26(B), N.M.S.A.1978. The prosecution and defense have stipulated that quaalude is a "dangerous drug" as defined by the Drug and Cosmetic Act, § 26–1–2 F, N.M.S.A.1978, and that methaqualone (the generic name for quaalude) is a controlled substance listed in Schedule II of the Controlled Substances Act. Quaalude is not a narcotic drug within the definition of § 30–31–2 (P) of the Controlled Substances Act.

Since both the Controlled Substances Act and the Drug and Cosmetic Act condemn the same offense, the principle issues in this appeal are whether defendants were properly charged under the Controlled Substances Act or whether the Drug and Cosmetic Act covers the unauthorized distribution of quaalude.

The State argues that distribution of quaalude falls within the Controlled Substances Act, § 30–31–22, because it is a non-narcotic drug listed in Schedule II of that act.

Defendants rely upon *State v. Allen*, 77 N.M. 433, 423 P.2d 867 (1967) which held that violations of administrative agricultural regulations could not be punished as criminal offenses absent an express provision making such violations a crime under the penalty provisions of the parent legislative enactment. Because the Controlled Substances Act, §§ 30–31–1 to –40, does not expressly provide that violations regarding substances added to such schedules

by administrative regulations are criminal offenses, defendants argue that they have not committed punishable offenses under that act and can only be properly charged under the Drug and Cosmetic Act.

In the Controlled Substances Act, the legislature has specifically listed certain controlled substances in Schedules I through V, inclusive and at § 30–31–3 has empowered the State Board of Pharmacy to "add by regulation substances to the list of substances enumerated in Schedules I through IV pursuant to the Uniform Licensing Act." The penalty provisions of the act do not specify that intentional distribution or possession with intent to distribute substances scheduled by regulation constitute criminal offenses. Section 30–31–22, (Repl.1980), provides in applicable part:

A. Except as authorized by the Controlled Substances Act * * *, it is unlawful for any person to intentionally distribute or possess with intent to distribute a controlled substance except a substance enumerated in Schedules I or II which is a narcotic drug. Any person who violates this subsection with respect to:

\* \* \* \* \* \*

(2) any other controlled substance enumerated in Schedules I, II, III, or IV except a substance enumerated in Schedule I or II which is a narcotic drug, is:

(a) for the first offense, guilty of a third degree felony and shall be sentenced pursuant to the provisions of Section 31–18–15 N.M.S.A., 1978; * * *.

In *Montoya v. O'Toole*, 94 N.M. 303, 610 P.2d 190 (1980), the Supreme Court upheld the constitutionality of the provisions in the Controlled Substances Act that authorize the State Board of Pharmacy to add by regulation to the list of scheduled substances in the act. In *O'Toole*, plaintiff contended that to allow the board to add to the scheduled drugs enumerated by the legislature amounted to an unlawful delegation of legislative authority, contrary to the New Mexico Constitution, and in violation of due process notice requirements of the New Mexico and United States Constitutions. By upholding the validity of the act,

*O'Toole* implicitly disposes of defendants' contention that express legislative authority is required to make the penalty provisions of the Controlled Substances Act applicable to drugs scheduled by administrative regulation.

■ Defendants further argue that they cannot be charged under the Controlled Substances Act because the Drug and Cosmetic Act more specifically and properly applies to the defenses alleged in this case. The courts in New Mexico have long adhered to the rule that where both a general and a specific statute condemn the same offense, the State must prosecute under the specific statute. *State v. Cuevas*, 94 N.M. 792, 617 P.2d 1307 (1980); *State v. Padilla*, 92 N.M. 19, 582 P.2d 396 (Ct.App.), *cert. denied*, 92 N.M. 180, 585 P.2d 324 (1978); *State v. Thoreen*, 91 N.M. 624, 578 P.2d 325 (Ct.App.), *cert. denied*, 91 N.M. 610, 577 P.2d 1256 (1978); *State v. Riley*, 82 N.M. 235, 478 P.2d 563 (Ct.App.1970).

Comparison of the Controlled Substances Act and the Drug and Cosmetic Act indicates that the Drug and Cosmetic Act treats regulation of dangerous drugs, including quaalude, and the category of persons subject thereto, in greater detail than does the Controlled Substances Act. Since neither legislative enactment specifically refers to quaalude, we must look to the specific provisions of the two acts to determine which legislative enactment deals more specifically with the category of substances which include the drug in question.

Section 26-1-18 of the Dangerous Drug Act empowers the Board of Pharmacy to declare by regulation a substance a "dangerous drug." As defined in the act at § 26-1-2 F, "dangerous drug" means:

[a] drug, other than a controlled substance enumerated in Schedule I of the Controlled Substances Act, which, because of any potentiality for harmful effect, or the method of its use, or the collateral measures necessary to its use, is not safe except under the supervision of a practitioner licensed by law to direct the use of such drug, and hence for which adequate directions for use cannot be prepared.

The Federal Drug Enforcement Administration has also listed methaqualone as a dangerous drug by federal regulation. The encyclopedic drug information text used in the medical field, Physician's Desk Reference, at 986 (33d ed. 1979), states that quaalude is used by physicians as a sedative-hypnotic agent, but it can be dangerous, and in some circumstances fatal, if taken in excess, by certain individuals, or in conjunction with other substances.

Section 30-31-3, N.M.S.A.1978, of the Controlled Substances Act, specifies the criteria for adding by administrative regulation additional substances to the list of scheduled substances in Schedules I through IV. The statute provides in applicable part:

A. * * * In determining whether a substance has the potential for abuse, the board shall consider the following:

(1) the actual or relative abuse of the substance;

(2) the scientific evidence of the pharmacological effect of the substance, if known;

(3) the state of current scientific knowledge regarding the substance;

(4) the history and current pattern of abuse;

(5) the scope, duration and significance of abuse;

(6) the risk to the public health;

(7) the potential of the substance to produce psychic or psychological dependence liability; and

(8) whether the substance is an immediate precursor of a substance already controlled under the Controlled Substances Act.

B. After considering the factors enumerated in subsection A, the board shall make findings and issue regulations controlling the substance if it finds the substance has a potential for abuse.

C. If the board designates a substance as an immediate precursor, substances of the controlled precursor shall not be subject to control solely because they are precursors of the controlled precursor.

D. If any substance is designated as a controlled substance under federal law and notice is given to the board, the board may, by regulation, similarly control the substance under the Controlled Substances Act.

\* \* \* \* \* \*

The Drug and Cosmetic Act is more specific in terms of its regulatory provisions as to methaqualone than the Controlled Substances Act, since the former act undertakes to regulate the possession, distribution or manufacture of those substances classified as "dangerous drugs," comprising drugs that have a valid medical or scientific use, but that are not safe unless used under the supervision and guidance of a licensed practioner. Mainly, the Drug and Cosmetic Act deals with drugs which are manufactured by legitimate manufacturers but subject to possible improper distribution, possession, misrepresentation or misuse unless carefully regulated and supervised.

The act, at § 26–1–16 A, specifies in part that:

A. It is unlawful for *any person* to sell, dispose of or possess any 'dangerous drugs,' unless they are:

(1) manufacturers or distributors, their agents or employees licensed by the board to ship dangerous drugs into the state; *or*

(2) distributors, hospitals, nursing homes, clinics or pharmacies and other authorized retailers of dangerous drugs in this state licensed by the board and appropriate records of dangerous drugs receipt and disposition are kept. These records shall be open to inspection by an enforcement officer of this state.

\* \* \* \* \* \*

E. It is unlawful, except as otherwise authorized under subsection A of this section or the Controlled Substances Act, and except for the College of Pharmacy of the University of New Mexico, or a public health laboratory, for *any person* to possess any dangerous drug unless such substance has been dispensed to him either directly by a practitioner or on a prescription. (Emphasis supplied).

The New Mexico Drug and Cosmetic Act was enacted in 1967 (Laws 1967, Chap. 23). The Controlled Substances Act was enacted by Laws 1972, Chapter 84, § 26–1–2, N.M. S.A. of the Drug and Cosmetic Act was amended by Laws 1977, Chap. 117, § 1.

■ Where two acts are in *pari materia* and impossible to reconcile, the specific act is construed to prevail over the general, and the later enactment, unless more general in its nature, governs over the earlier. *State v. Blevins,* 40 N.M. 367, 60 P.2d 208 (1936); *see also State v. Lujan,* 76 N.M. 111, 412 P.2d 405 (1966); *State v. Alderete,* 88 N.M. 150, 538 P.2d 422 (Ct.App.1975).

As stated in *State v. Blevins, supra* :
It is a fundamental rule that where the general statute, if standing alone, would include the same matter as the special act, and thus conflict with it, the special act will be considered as an exception to the general statute, whether it was passed before or after such general enactment. Where the specific statute is later, it will be regarded as an exception to, or qualification of, the prior general one, and where the general act is later, the special statute will be construed as remaining an exception to its terms, unless it is repealed in express words or by necessary implication.

■ Since, under both the Controlled Substances Act and the Drug and Cosmetic Act, the legislature has itself not specifically designated methaqualone as a controlled substance or dangerous drug under either enactment, but has under both acts authorized the State Board of Pharmacy to add such substance by administrative regulation to the list of substances controlled under such acts, in the absence of a clear legislative declaration of intent as to which penalty should be controlling, we conclude the more specific act should control.

Applying the above rules of construction to the two enactments, both regulating the sale or distribution of methaqualone, such rules require that only the penalty provisions of the New Mexico Drug and Cosmetic Act have application to the drug in question. Such act is more specific.

■ The State further argues that under *Pharmaceutical Manufacturers Association v. New Mexico Board of Pharmacy*, 86 N.M. 571, 525 P.2d 931 (Ct.App.), *cert. quashed*, 86 N.M. 657, 526 P.2d 799 (1974), the Drug and Cosmetic Act applies to legitimate handlers of controlled drugs, and not to defendants or others similarly situated who are not involved in the authorized use of such substances. The State misreads *Pharmaceutical* and the Drug and Cosmetic Act. *Pharmaceutical* does state that the legislative intent of the Drug and Cosmetic Act, "*in general,* is to help * * * establish a closed regulatory system for the legitimate handlers of controlled drugs," (Emphasis supplied). Nevertheless, a careful reading of the legislation indicates that to effectuate its purpose, the legislature specifically delineated penalties for *all categories of persons* charged with violations thereof, unless otherwise specifically exempted from application therein as legitimate practitioners. Examination of the Drug and Cosmetic Act fails to indicate any legislative intent to limit the class of persons to whom the act applies.

Finding no error, the orders of the trial court are affirmed.

IT IS SO ORDERED.

HENDLEY, J., concurs.

WOOD, J., dissents.

WOOD, Judge (dissenting).

The majority opinion applies the rule that the specific act controls over the general act. I agree that the rule applies in these appeals; I differ with the majority holding that the Drug and Cosmetic Act is more specific than the Controlled Substances Act. I would reverse the trial court's orders and reinstate the charges brought under the Controlled Substances Act.

New Mexico began regulating "narcotic drugs" in 1935 and "drugs and cosmetics" in 1951. See generally §§ 54–6–1, et seq. and 54–7–1, et seq., N.M.S.A.1953 Comp. (Repl. Vol. 8, pt. 2). In 1967, the Legislature enacted the Drug and Cosmetic Act referred to in the majority opinion. Laws

1971, ch. 245 amended both the Narcotic Drug Act and the Drug and Cosmetic Act enacted in 1967. Then, by Laws 1972, ch. 84, the Legislature enacted what is known as the Controlled Substances Act and amended the Drug and Cosmetic Act of 1967.

The Controlled Substances Act, by its contents, is an inclusive Act; the Act is not limited to narcotic drugs as was its predecessor. A comparison shows the Controlled Substances Act was based upon the federal Comprehensive Drug Abuse Prevention and Control Act of 1970. The federal Act was "designed to deal in a comprehensive fashion with the growing menace of drug abuse" by, among other things, "providing for an overall balanced scheme of criminal penalties for offenses involving drugs." 3 U.S.Code Cong. & Ad.News, 4567 (1970). New Mexico had the same purpose in enacting the Controlled Substances Act.

To deal with drugs comprehensively, the Controlled Substances Act, in § 30–31–5, N.M.S.A.1978 (1980 Repl.Pamph.), establishes criteria which, if met, require the State Board to place a substance on the schedules established by the Controlled Substances Act. Quaalude has been placed in Schedule II. To be placed in Schedule II, the substance must have a "high potential for abuse". Section 30–31–5(B), supra. This requirement is to be compared with the requirement for listing a substance as a "dangerous drug" under the Drug and Cosmetic Act. The definition of a "dangerous drug," quoted in the majority opinion, is not concerned with abuse, but with a potentially harmful effect which requires use under supervision. A substance in Schedule II will meet the definition of a dangerous drug, but all dangerous drugs will not meet the "high potential for abuse" criteria of Schedule II. Regulation of a substance by placing it in Schedule II is more specific than classifying the substance as a dangerous drug.

Section 30–31–5(B), supra, states that the Board "shall place" a substance in Schedule II if the three statutory criteria are met. By contrast, § 26–1–18(B), N.M.S.A.1978

(Drug and Cosmetic Act) states that the Board "shall by regulation declare a substance a 'dangerous drug' *when necessary*". (Emphasis added.) The duty of the Board to include a substance in Schedule II (three requirements) is more specific than the duty to declare a substance a dangerous drug "when necessary".

Fore's motion to dismiss informs us that the State Board of Pharmacy regulates Quaalude as a depressant. The Drug and Cosmetic Act specifically regulated depressants prior to the 1972 Act, at which time the specific regulation of depressants was repealed. Compare Laws 1967, ch. 23, §§ 2(F) and 13, and Laws 1971, ch. 245, § 2(F) with Laws 1972, ch. 84, §§ 43 and 47. Subsequent to the 1972 law, the Drug and Cosmetic Act regulates depressants only under the general regulation of dangerous drugs.

The Drug and Cosmetic Act, prior to the 1972 Act, made the sale of depressants a felony. As a first offense, sale to a person under eighteen years of age was a third degree felony; sale to a person over eighteen years of age was a fourth degree felony. Laws 1971, ch. 245, §§ 4(B) and (C). These felony provisions were removed from the Drug and Cosmetic Act at the time the specific regulation of depressants was removed. See Laws 1972, ch. 84, § 53. The controlled substances portion of that same 1972 law made distribution, or possession with intent to distribute, a non-narcotic Schedule II substance, a third degree felony for the first offense and a second degree felony for subsequent offenses. Laws 1972, ch. 84, § 22. Those penalties are presently in effect. See § 30–31–22(A)(2), N.M.S.A. 1978 (1980 Repl.Pamph.). The "balanced scheme of criminal penalties for offenses involving drugs" is met only if the Controlled Substances Act applies; the balanced scheme is not met by treating the offense as a petty misdemeanor for the first offense under the Drug and Cosmetic Act. Section 26–1–26(B), N.M.S.A.1978.

The Drug and Cosmetic Act contains indications that it was intended to apply only when the Controlled Substances Act is not applicable. Section 26–1–22, N.M.S.A.1978, makes it unlawful to obtain, or attempt to obtain, by fraud, forgery, concealment of a material fact or by false name "any dangerous drugs other than a controlled substance". Section 26–1–23, N.M.S.A.1978, makes it unlawful to falsify or forge prescriptions or written orders "for dangerous drugs other than controlled substances." Under the majority view, an attempt to obtain a dangerous drug by fraud is a petty misdemeanor; so is the actual sale of a dangerous drug placed in Schedule II of the Controlled Substances Act. The majority view is unreasonable and defeats the objective of the Legislature. *State v. Garcia*, 93 N.M. 51, 596 P.2d 264 (1979).

Summarizing, I would hold that the Controlled Substances Act applies because:

1. Schedule II regulation is more specific than "dangerous drug" regulation.

2. The duty of the Board to regulate a substance that meets the criteria for Schedule II is more specific than the duty to regulate a substance as a dangerous drug.

3. The drug involved, Quaalude, is a depressant. Specific regulation of depressants has been removed from the Drug and Cosmetic Act.

4. The felony penalty for distribution of non-narcotic Schedule II substances is in the same Act that removed depressants from the Drug and Cosmetic Act.

5. Statutory indications are that the Drug and Cosmetic Act applies only when the Controlled Substances Act does not apply.

The majority do not agree; I dissent.