IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 10, 2019 Session

## STEVEN H. PARKER v. BRUNSWICK FOREST HOMEOWNERS ASSOCIATION, INC.

### Appeal from the Chancery Court for Shelby County
No. CH-16-1541    JoeDae L. Jenkins, Chancellor

_____

### No. W2018-01760-COA-R3-CV
_____

Following a bench trial, the trial court awarded the Defendant/Appellee $28,372.06 in attorney's fees based upon an attorney's fees provision in the parties' written agreement. Plaintiff/Appellant appeals the award of attorney's fees on the basis that the relevant provision is inapplicable under the circumstances. Because we conclude that the trial court did not err in awarding the Appellee its attorney's fees, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

J. STEVEN STAFFORD, P. J., W.S., delivered the opinion of the court, in which ARNOLD B. GOLDIN and KENNY ARMSTRONG, JJ., joined.

John R. Candy, Collierville, Tennessee, for the appellant, Steven H. Parker.

Brandon F. McNary and Peter D. Baskind, Memphis, Tennessee, for the appellee, Brunswick Forest Homeowners Association, Inc.

### OPINION

#### BACKGROUND

This case is about fees assessed by the Brunswick Forest Homeowners Association ("the Association") against Steven H. Parker ("Homeowner") related to Homeowner's residence in Shelby County, Tennessee. Homeowner purchased his home in 2014 subject to various provisions enshrined in the Declaration of Covenants, Conditions and Restrictions for Brunswick Forest ("CCRs" or "the Declaration"). One such provision states that the homeowners in Brunswick Forest "shall be deemed to covenant and agree to pay to [the Association] . . . annual assessments or charges." As such, the Association assessed charges against Homeowner for the years 2015 and 2016.

Homeowner, however, did not tender payment, and the Association mailed a letter to the Homeowner indicating that Homeowner was delinquent. The Association requested that Homeowner tender $280.00 to cover the late assessments, as well as $100.00 in related attorney's fees.

Homeowner again refused to pay the assessments. On July 18, 2016, the Association sent a second letter to Homeowner, advising him that due to the delinquency of the assessments, a lien on Homeowner's property was to be recorded in the Shelby County Register's Office. In response, Homeowner, acting pro se, filed a complaint against the Association on September 29, 2016, in the Chancery Court for Shelby County ("the trial court"). Appellant also named two directors of the Association, Paul T. Ryan and Garrett Temple, individually, in the complaint, however, both Mr. Ryan and Mr. Temple were dismissed from the case early in the litigation and are not parties to this appeal. In his complaint, Homeowner alleged that the Association did not follow the relevant bylaws of the CCRs in calculating the assessments and because of that, the assessments and the lien placed on Homeowner's home were invalid. According to Homeowner, the Association was liable for breach of fiduciary duty, a conflict of interest, and for intentional harm inflicted upon the Homeowner. Homeowner sought the removal of the lien from his property, and a declaration that "the amount of the assessment for which the lien was filed was not set in accordance with the [CCRs] and the Tennessee Code Annotated regarding Non-profit corporations."

On November 7, 2016, the Association filed an answer denying the material allegations contained in Homeowner's complaint. The Association also filed a counterclaim against Homeowner, asserting a cause of action for breach of contract on the basis that Homeowner failed to fulfill his obligations under the CCRs, namely, payment of the annual assessments for 2015 and 2016. The Association further asserted that it was entitled to costs and attorney's fees pursuant to the CCRs.

Contentious litigation ensued. The first trial judge assigned to the case recused himself due to a conflict of interest; the case was thereafter transferred to a different division of the Shelby County Chancery Court. In the meantime, Homeowner sought to amend his complaint, and eventually filed an amended complaint wherein he also alleged a breach of contract action; specifically, Homeowner averred that he was unlawfully denied access to the "books and records" of the Association, in violation of the CCRs. Eventually, on August 24, 2017, the Association filed a motion for partial summary judgment asking the trial court to find Homeowner liable for breach of contract "for his failure to pay assessments." The motion was heard September 27, 2017, and on September 29, 2017, the trial court entered an order granting the Association summary judgment on its breach of contract claim.[1]

---

[1] The trial judge relied on the following provision from the CCRs in rendering his decision:

Also on September 29, 2017, conflict with the second trial judge came to a head after allegations from the Homeowner that the judge had been harassing Homeowner and attempting to force him to retain counsel. While the trial judge denied these allegations, he ultimately decided to recuse himself from the case. Accordingly, a second order of recusal was entered September 29, 2017, and the case was again transferred to a different division of the chancery court.

Homeowner eventually retained counsel, and this matter proceeded to trial on August 23, 2018. At the hearing, the court first heard testimony from the Homeowner, who conceded that he purchased his home in 2014 and that he signed the CCRs at issue at that time. Homeowner testified in support of his affirmative claims, generally testifying that the Association did not provide access to information needed to support the assessments, such as how the assessments were calculated, and that the assessments, along with the lien to secure them, were invalid as a result.

The trial court also heard testimony from Mr. Ryan and Mr. Temple. Mr. Ryan testified that he was one of the partners in the Brunswick Forest development and that he was serving as a director of the Brunswick Homeowner's Association when the dispute with the Homeowner began.[2] With regard to the assessments, Mr. Ryan testified that the assessment amount had been the same for many years because the Association "had a history with the expenses and knew what the expenses were." He also testified that the Association followed all provisions in the CCRs when assessing the various fees for each lot, including estimating the annual amounts thirty days before each assessment period and sending a notice of assessment to each homeowner. Mr. Ryan also confirmed that the Homeowner refused to pay his assessments for 2015 and 2016.

---

Article VI, Section I of Declaration provides that:

[e]ach Owner of any Lot, by acceptance of a deed therefor, whether or not it shall be so expressed in any such deed or other conveyance, shall be deemed to covenant and agree to pay to the Association: (1) annual assessments or charges; (2) special assessments for capital improvements; and (3) emergency assessments, such assessments to be fixed, established and collected from time to time as hereinafter provided. The annual special and emergency assessments, together with such interest thereon and costs of collection thereof as are hereinafter provided, shall be a charge on the land and shall be a continuing lien upon the Lot against which each such assessment is made. Each such assessment, together with such interest thereon and cost of collection thereof as are hereinafter provided, shall also be the personal obligation of the Person who was the Owner of such Lot at the time when the assessment fell due.

Accordingly, the trial court found that "[Homeowner] failed to pay the assessments for 2015 and 2016."

[2] Mr. Ryan no longer serves as a director of the Association.

Mr. Temple's[3] testimony regarding how the assessments were calculated largely reiterated that of Mr. Ryan. Mr. Temple also recalled a meeting with the Homeowner during December of 2016, at which time the Homeowner's delinquent assessments totaled $280.00. Mr. Temple testified that in the meeting, Homeowner agreed to pay assessments going forward if the Association would waive the outstanding $280.00 and remove the lien from Homeowner's property. Mr. Temple testified that when the Association would not agree to those terms, Homeowner abruptly left the meeting. Finally, Mr. Temple stated that because of the protracted litigation caused by this case, the Association had been forced to raise the yearly assessment amount to $650.00.

The trial court issued an oral ruling in which it concluded that the Homeowner failed to carry his burden of proof in showing that the Association breached its contract with the Homeowner, or that Homeowner had suffered any damage as a result of the Association's actions. The trial court determined that Homeowner's complaint should be dismissed in its entirety; the issue of attorney's fees, however, was reserved for a later date.

The trial court held a final hearing on September 5, 2018 in order to determine the issue of attorney's fees, which both parties had requested they be awarded. At the hearing, counsel for the Association testified about the fees incurred throughout the case, stating that much of the Association's work was done in response to the multitude of motions and pleadings that were filed by the Homeowner while he was proceeding pro se. Counsel's overall testimony was that the fees incurred were reasonable under the circumstances, and that the total amount including costs came to $32,371.06.

The dispute at this hearing, however, largely centered on the language of the CCRs and whether, pursuant to that language, the Association could collect attorney's fees related to its defense of Homeowner's claims. One provision of the CCRs, found in Article VI, section five, provides that "[t]he Association may bring an action at law against" a homeowner in the event that the assessments are unpaid, and that "the Association may collect from the said [m]ember interest, costs and reasonable attorneys' fees." Further, Article XII, section 3 expressly discusses enforcement of the CCRs and states that "[t]he expense of enforcement by the Association shall be chargeable to the Owner of the Lot violating these covenants and restrictions and shall constitute a lien on of the Lot, collectible in the same manner as assessments hereunder."

Based upon the language in the CCRs, particularly the Article VI provision, the Homeowner argued that most of the fees incurred by the Association arose in defense of Homeowner's actions, rather than from prosecuting its own breach of contract claim. As such, the Homeowner argued that the Association's attorney's fees did not accrue as a result of the Association "bring[ing] an action at law[.]" In support, the Homeowner

---

[3] Mr. Temple was still serving as the president of the Association at the time of trial.

alleged that he had examined the bills submitted by the Association, and that the fees accrued in prosecuting the Association's counterclaim only amounted to approximately $1,500.00. Based upon the language of the contract, Homeowner asserted that the Association was not entitled to any award of attorney's fees over and above what was accrued in bringing the counterclaim. Essentially, Homeowner argued that the Association should only be awarded, if anything, $1,500.00 in attorney's fees.

At the conclusion of the hearing, the trial court ruled that it would award attorney's fees to the Association. In addressing the Homeowner's argument that the Association was entitled only to fees accrued in furtherance of its counterclaim, the trial court noted the following:

It appears that this litigation rolls out of the Association's right to collect Association dues through annual assessments. [Homeowner] disputed the Association's right to collect the annual assessments and refused to pay them, which gave rise to his lawsuit, which initiated this litigation.

The gravamen of his lawsuit was to avoid the payment of annual assessments, two years' worth, plus an [sic] attorney fees of $100.00. The litigation was protracted; although not overly complicated, it was protracted based upon the numerous pleadings filed by [Homeowner] who did a pretty decent job being a non-lawyer requiring the Association's counsel to respond to the various motions and pleadings that he filed.

Accordingly, the trial court found that the Association was entitled to attorney's fees in the amount of $28,372.06.

On September 10, 2018, the trial court entered two written orders finalizing its rulings. The first order, titled Order Dismissing Plaintiff's Complaint, provided that although Homeowner was contractually required to pay assessments to the Association, Homeowner failed to pay in 2015, 2016, and 2018.[4] As such, the Association's "lien on the property was valid[,]" and, further, Homeowner failed to show how he was damaged by the lien. Accordingly, it was the trial court's conclusion that Homeowner did not carry his burden of proof as to any of his claims. A separate order was entered addressing the attorney's fees, wherein the trial court found that "this matter arose solely out of the [Association's right to collect assessments[,]" and that Homeowner's "lawsuit against [the Association] was for the sole purpose of avoiding the payment of assessments." The trial court further noted that the Association was required to respond to Homeowner's

---

[4] It is undisputed that Homeowner did pay the assessments for 2017. It is also undisputed that after trial, on August 28, 2018, the Homeowner remitted $980 to the Association in order to have the lien on Homeowner's property removed.

pleadings in order to fully prosecute its counterclaim, and that as such, the Association was entitled to an award of attorney fees pursuant to the language in the CCRs. Finally, the trial court determined that the requested attorney's fees were reasonable in light of all the circumstances.

Homeowner filed a timely notice of appeal to this Court on September 26, 2018.

## ISSUE PRESENTED

The Homeowner raises a single issue for review: Whether the trial court erred in awarding attorney's fees to the Association.

## STANDARD OF REVIEW

This case was resolved following a bench trial. Under rule 13 of the Tennessee Rules of Appellate Procedure, the trial court's findings of fact from a bench trial are reviewed "de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). A trial court's conclusions of law, however, are not entitled to a presumption of correctness. *Johnson v. Johnson*, 37 S.W.3d 892, 894 (Tenn. 2001).

We also bear in mind that the single issue for review in this case centers on the trial court's interpretation and application of an attorney's fees provision within a written contract. "The interpretation of a written agreement is a question of law and not of fact." *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009). Moreover, "[t]hough normally review of an award of attorney's fees is subject to an abuse of discretion standard," where the parties dispute the trial court's "interpretation and application of a contractual provision allowing for attorney's fees[,]" our review is de novo. *Southwind Residential Prop. Ass'n, Inc. v. Ford*, No. W2016-01169-COA-R3-CV 2017 WL 991108, at *10 (Tenn. Ct. App. Mar. 14, 2017) (citing *Clark v. Rhea*, No. M2002-02717-COA-R3-CV, 2004 WL 63476, at *2 (Tenn. Ct. App. Jan. 13, 2004)).

## DISCUSSION

The dispute in the present case turns on the trial court's application of a provision within the CCRs providing for attorney's fees incurred in a collection action. We have previously held that CCRs "arise from a series of overlapping contractual transactions" and as such, "should be viewed as contracts." *General Bancshares, Inc. v. Volunteer Bank & Trust*, 44 S.W.3d 536, 540 (Tenn. Ct. App. 2000) (citing *Maples Homeowners Ass'n v. T &R Nashville Ltd. P'ship*, 993 S.W.2d 36, 39 (Tenn. Ct. App. 1998)). Accordingly, CCRs "should be construed using the rules of construction generally applicable to the construction of other contracts." *Id.*; *see also Southwind*, 2017 WL 991108, at *6 ("Because the instant case involves the interpretation of restrictive

covenants, we apply well-established rules of construction and law in order to construe the terms of the covenants."). Thus, because the CCRs at issue here are subject to the rules of construction applicable to contracts, we turn first to an overview of those rules.

As we have previously noted,

"[t]he cardinal rule for interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention consistent with legal principles." *Rainey v. Stansell*, 836 S.W.2d 117, 118–19 (Tenn. Ct. App. 1992) (quoting *Bob Pearsall Motors, Inc. v. Regal Chrysler–Plymouth, Inc.*, 521 S.W.2d 578 (Tenn. 1975)). "A primary objective in the construction of a contract is to discover the intention of the parties from a consideration of the whole contract." *Id.* at 119 (citing *McKay v. Louisville & N.R. Co.*, 133 Tenn. 590, 182 S.W. 874, 875 (1916)). When resolving disputes concerning contract interpretation, we are to ascertain the intention of the parties based upon the "usual, natural, and ordinary meaning" of the contractual language. *Id.* "All provisions in the contract should be construed in harmony with each other, if possible, to promote consistency and to avoid repugnancy between the various provisions of a single contract." *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999) (citing *Rainey*, 836 S.W.2d at 118–19).

If the contract language is unambiguous, the written terms control, not the "unexpressed intention of one of the parties." *Sutton v. First Nat'l Bank of Crossville,* 620 S.W.2d 526, 530 (Tenn. Ct. App. 1981). "The language of a contract is ambiguous when its meaning is uncertain and when it can be fairly construed in more than one way." *Gredig v. Tenn. Farmers Mut. Ins. Co.*, 891 S.W.2d 909, 912 (Tenn. Ct. App. 1994) (citing *Farmers-Peoples Bank v. Clemmer*, 519 S.W.2d 801, 805 (Tenn. 1975)). "A strained construction may not be placed on the language used to find ambiguity where none exists." *Id.* (quoting *Farmers-Peoples Bank*, 519 S.W.2d at 805). "An ambiguous provision in a contract generally will be construed against the party drafting it." *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 612 (Tenn. 2006).

*Commerce Union Bank, Brentwood, Tennessee v. Bush*, 512 S.W.3d 217, 227–28 (Tenn. Ct. App. 2016).

Moreover, the present case centers on the trial court's decision to award the Association its attorney's fees based upon the parties' written agreement. "Tennessee, like most jurisdictions, adheres to the 'American rule' for the award of attorney fees." *Cracker Barrel*, 284 S.W.3d at 309 (citing *John Kohl & Co. v. Dearborn & Ewing*, 977 S.W.2d 528, 534 (Tenn. 1998); *Pullman Standard, Inc. v. Abex Corp.*, 693 S.W.2d 336, 338 (Tenn. 1985)). "As a general principle, the American rule reflects the idea that public

policy is best served by litigants bearing their own legal fees regardless of the outcome of the case." *Id.* (citing *House v. Estate of Edmondson*, 245 S.W.3d 372, 377 (Tenn. 2008)). There are, however, recognized exceptions to the American rule; indeed, "a party in a civil action may recover attorney fees only if: (1) a contractual or statutory provision creates a right to recover attorney fees; or (2) some other recognized exception to the American rule applies, allowing for recovery of such fees in a particular case." *Id.* (citing *John Kohl*, 977 S.W.2d at 534; *Taylor v. Fezell*, 158 S.W.3d 352, 357 (Tenn. 2005)).Thus, "[i]n the context of contract interpretation, Tennessee allows an exception to the American rule only when a contract *specifically* or *expressly* provides for the recovery of attorney fees." *Id.* (citing *House*, 245 S.W.3d at 377) (emphasis in original); *see also Pinney v. Tarpley*, 686 S.W.2d 574, 581 (Tenn. Ct. App. 1984) ("In the absence of an express agreement to pay attorney's fees for enforcement of a contract, such fees are not recoverable in Tennessee."); *Eberbach v. Eberbach*, 535 S.W.3d 467, 474 (Tenn. 2017) (noting that in the absence of a contractual provision providing for attorney's fees, "litigants are responsible for their own attorney's fees."). "Accordingly, parties who have prevailed in litigation to enforce their contractual rights are entitled to recover their reasonable attorney's fees once they demonstrate that the contract upon which their claims are based contains a provision entitling the prevailing party to its attorney's fees." *Eberbach*, 535 S.W.3d at 474.

It has also been held, however, that a contractual provision allowing for attorney's fees must explicitly convey the right to recover those fees. For instance, on its own the phrase "all costs and expenses" is not specific enough to include an award of attorney's fees. *Cracker Barrel*, 284 S.W.3d at 310–11; *compare Kultura, Inc. v. S. Leasing Corp.*, 923 S.W.2d 536, 540 (Tenn. 1996) (determining that alone, the phrase "any loss" does not include attorney's fees), *with Harris v. 4215 Harding Road Homeowners Ass'n*, 74 S.W.3d 359, 361 (Tenn. Ct. App. 2001) (holding that an award of attorney's fees was appropriate where the master deed at issue provided that "all costs and expenses, including a reasonable attorney's fee," was recoverable in an action to enforce the deed), *and Urbanavage v. Capital Bank*, No. M2016-01363-COA-R3-CV, 2018 WL 3203100, at *10 (Tenn. Ct. App. June 29, 2018) (recognizing that the language "late fee and interest . . . and cost of collection when delinquent, including reasonable attorney's fees[,]" was a proper legal basis upon which to award attorney's fees). Consequently, a departure from the American rule is inappropriate in the absence of a provision expressly providing for an award of attorney's fees.

Turning to the instant case, the pertinent clause of the CCRs is found in Article VI, section five of the Declaration:

> Any assessment levied pursuant to this Declaration or any installment thereof, which is not paid within ten (10) days after it is due, may, upon resolution of the Board of Directors, bear interest at a rate not to exceed the highest rate allowed under the laws of the State of Tennessee,

and may, by resolution of the Board of Directors, subject the Member obligated to pay the same to the payment of such penalty or "late charge" as the said Board may fix. **The Association may bring an action at law against the Member personally obligated to pay the same**, **or foreclose the lien against the Lot or Lots subject to prior mortgages or Deeds of Trust upon the Lot or Lots, then belonging to said Member; in either of which events, the Association may collect from the said Member interest, costs and reasonable attorneys' fees**. No Owner may waive or otherwise escape liability for the assessments provided for herein by abandonment of his Lot.

(emphasis added). Clearly, the CCRs at issue provide for an award of attorney's fees when the Association "bring[s] an action at law" to recover an unpaid assessment. Thus, there can be no dispute that the Association was, in fact, at least entitled to its attorney's fees incurred solely in prosecuting its counterclaim for the unpaid assessments. Unlike other contracts we have previously considered, however, the CCRs do not specifically state whether the attorney's fees also extend to defense of an action. The dispute, then, involves whether the above language also authorizes the Association to recover the fees incurred in ostensibly defending against Homeowner's claims.

In the absence of specific language authorizing attorney's fees for defending actions, this Court has often rejected claims for attorney's fees by defendants, albeit based on different contractual language and factual situations not present in this case. For instance, in *Smith v. Crossman*, No. M2003-01108-COA-R3-CV, 2004 WL 1732319 (Tenn. Ct. App. Aug. 2, 2004), we addressed the issue of an attorney's fees provision within a commercial lease. In *Smith*, the tenants of small grocery store sued their landlord after a Dollar General store in the same complex began selling food items, which the tenants alleged was in violation of a protective covenant within their lease. 2004 WL 1732319, at *1. In response, the landlord argued that it had no authority to constrain the Dollar General from selling food, and also added a counterclaim for attorney's fees only. *Id.* Eventually, the tenants dismissed their lawsuit, but the landlord's counterclaim for attorney's fees remained. *Id.* The trial court held that the landlord was entitled to attorney's fees in the amount of $14,320, based on the following provision in the lease:

Tenant shall pay reasonable attorneys fees incurred by Landlord in the enforcement of any terms, covenants, or provisions of this lease, and the Landlord also agrees to reimburse tenant for reasonable attorney fees in the enforcement of any terms, covenants, or provisions of this lease.

The tenants appealed, making a similar argument to that of the Homeowner in the case-at-bar; specifically, the tenants asserted that the landlord's attorney's fees were only

incurred in defense of their claim, rather than through the landlord's enforcement of his rights under the lease. *Id.* at \*2. We agreed:

> In its counterclaim, [l]andlord merely invoked the attorney's fees provision and alleged that it was 'incurring attorneys fees in the defense of this action. . . .' At no time did [l]andlord counter that [t]enants were in breach of the lease or seek to enforce any term of the agreement.

*Id.* In the **Smith** lease, attorney's fees were only recoverable where terms of the lease were being enforced. *Id.* In that particular case, the landlord was not attempting "to enforce any term, covenant or provision of the lease[,]" but rather only sought to defend against the tenants' claim. *Id.* As such, the award of attorney's fees was inappropriate under the circumstances, and we reversed the trial court's decision. *Id.* at \*3.

Similarly, in **White v. Empire Exp. Inc.**, 395 S.W.3d 696 (Tenn. Ct. App. 2012), we again considered the propriety of a trial court's award of attorney's fees. In that case, the plaintiff truck driver brought suit against his employer and an affiliated company for breach of contract and conversion over a rent-to-own lease of the plaintiff's truck. 395 S.W.3d at 705. The defendants filed an answer, arguing that plaintiff had defaulted on the contract by failing to make various payments, and sought a declaration "saying that [plaintiff] failed to satisfy his obligations." *Id.* Defendants also counterclaimed for money damages, "including attorney fees incurred in defending the suit." *Id.*

Eventually, the defendants sought summary judgment on the plaintiff's breach of contract claim, and also "claimed they were entitled to summary judgment on their counterclaim for attorney's fees and other damages pursuant to the [l]ease." *Id.* Likewise, the plaintiff filed a cross-motion for summary judgment asking the trial court to determine that the defendants had breached the lease agreement. *Id.* at 706. The trial court granted in part the plaintiff's motion for summary judgment, finding that the plaintiff was not in breach of contract; on the other hand, the defendants' motion for summary judgment was denied completely, and their counterclaim for attorney's fees under the terms of the lease was dismissed. *Id.* The case proceeded to trial, and the plaintiff prevailed on all of the remaining claims. *Id.* at 710–11. The defendants thereafter appealed to this Court. *Id.*

One of the many issues raised on appeal was whether the trial court erred in denying the defendants' motion for summary judgment for attorney's fees under the terms of the parties' agreement. *Id.* at 711–12. In that lease, the attorney's fees clause provided that "[plaintiff] agrees to pay all expenses incurred by [the defendant] in enforcing its rights after the occurrence of any event of default hereunder, including the reasonable fees of any attorneys retained by [the defendant] . . . ." *Id.* at 718. On appeal, we concluded that pursuant to the particular language of the lease at issue, the trial court was correct in determining that the defendants were not entitled to attorney's fees. *Id.* In

so holding, we pointed out that the defendants were "being required to defend their own actions rather than seeking to enforce their rights as provided in [the lease]." *Id.* Because the lease indicated that attorney's fees were only available through action by the defendant "enforcing its rights" after a default, this Court determined that the counterclaim for attorney's fees, on its own, was insufficient to bring the counterclaim within the purview of the attorney's fees clause at issue. *Id.* Consequently, the trial court's decision to deny the defendants their attorney's fees was upheld on appeal in *White*.

Finally, in *Southwind Residential Prop. Ass'n, Inc. v. Ford*, No. W2016-01169-COA-R3-CV, 2017 WL 991108, at *10 (Tenn. Ct. App. Mar. 14, 2017), we yet again addressed a situation in which the parties disputed the applicability of an attorney's fees provision, as it relates to fees incurred defending and pursuing a claim. In that case, the plaintiff homeowner's association filed suit against two homeowners after a dispute arose over the homeowners' refusal to pay the full amount of the annual assessments on their property. *Id.* at *2. In addition to the assessments, the association's petition asked for costs and attorney's fees. *Id.* The homeowners responded by answering the petition but also by filing a counterclaim for other various actions such as negligent misrepresentation, intentional misrepresentation, and breach of contract. *Id.* The parties litigated for several years before the matter proceeded to trial, and the association was eventually awarded a judgment for the assessments at issue, as well as an award of nearly $67,000 in attorney's fees. *Id.* at *6. The homeowners appealed, raising, inter alia, the trial court's decision to grant the association its attorney's fees. *Id.*

In addressing the attorney's fees issue on appeal, we looked to the language of the relevant CCRs, which provided that "[e]ach such assessment, together with interest and costs of collection, including reasonable attorney's fees, shall be a personal obligation of the person who was the owner of such Member's Property at the time when the assessment fell due." *Id.* at *10. Based upon the foregoing language, the homeowners argued that

> the attorney's fees incurred in this case are not properly categorized as 'costs of collection,' because the fees awarded by the trial court include fees incurred in the defense of two separate lawsuits, [n]either [of which] involves the collections of assessments, nor [are] reasonably related to the collection of assessments in the present action.

*Id.*

Essentially, the homeowners asserted that to the extent the attorney's fees at issue were incurred in defense of the homeowners' claims unrelated to the assessments, those could not be construed as "costs of collection." *Id.* at *11. However, because we concluded that the homeowners failed to preserve a specific objection to the attorney's

- 11 -

fees award at trial, this argument was waived on appeal. *Id.* Notably, however, we stated in dicta that "typically, we would agree with [the homeowners] that **costs incurred in separate litigation not related to this collection action** cannot be categorized as costs of collection for purposes of the CCRs." *Id.* (emphasis added). Accordingly, although the homeowners in *Southwind* failed to properly raise the argument that the association could not recover certain fees accrued in defense of a separate, unrelated claim, we acknowledged that under different circumstances, such an argument could have merit.

Distilled to their essence, the above cases stand for the proposition that, in the absence of an express provision authorizing attorney's fees for the defense of an action, the defendant cannot recover attorney's fees where the defendant: (1) did not assert a claim for affirmative relief, such as a breach of contract action, against the plaintiff, *see Smith*, 2004 WL 1732319 at *2–*3; (2) did not prevail in showing that the plaintiff breached some duty to the defendant, *see White*, 395 S.W.3d at 718; and (3) sought attorney's fees related to a wholly separate action unrelated to the present enforcement proceeding. *See Southwind*, 2017 WL 991108, at *10 (involving fees related to an action involving landscaping rather than assessments). In this case, however, the Association promptly filed a counterclaim for breach of contract against Homeowner, prevailed on all claims, both in prosecution of the counterclaim and defense of Homeowner's claims, and the claims were clearly interrelated as they both concerned the validity of the assessments and the lien. Consequently, none of the above cases prohibit the award of fees in this case.

Of course, determining that our caselaw does not prohibit the award in this situation does not settle the matter of whether the fees were authorized by the language in the CCRs. As such, we turn to caselaw from our sister jurisdictions to inform our analysis. For example, several states have held that where attorney's fees were authorized for bringing certain claims under a statute, fees incurred in defending such a claim could be authorized where "the claim and counterclaim are so interrelated that segregation of fees incurred in prosecution of the claim and defense of the counterclaim is not necessary." **G.R.A.V.I.T.Y. Enterprises, Inc. v. Reece Supply Co.**, 177 S.W.3d 537, 551 (Tex. App. 2005); *see also* **Regency Homes of Dade, Inc. v. McMillen**, 689 So.2d 1204 (Fla. Ct. App. 1997) (noting that where the issues involved both defense of a lien and a counter-petition for breach of contract, the issues were so intertwined that the attorney's time could not reasonably be apportioned); **Jerels v. Begue**, No. 24700, 2010 WL 1780140, at *3 (Ohio Ct. App. May 5, 2010) (finding under an Ohio landlord/tenant statute that when a trial court concludes that work completed in support of a claim and the work completed in defending the related counterclaim are indivisible, "it is within the trial court's discretion to award the prevailing [party] the attorney fees he or she reasonably incurred in both pursuing the claim and defending against the counterclaim. To hold otherwise would be illogical."). The attorney's fee award in this case, however, is not based upon statute, but based upon a contract; accordingly, the trial court had considerably less discretion in the award of fees in this case. *See Eberbach*, 535 S.W.3d

at 478–79 ("[T]he trial court does not have the discretion to set aside the parties' agreement and supplant it with its own judgment.").

Other courts, however, have come to similar conclusions after considering attorney's fees based solely on a contract. First, in *Heyde v. State Sec., Inc.*, 1958-NMSC-009, 63 N.M. 395, 400, 320 P.2d 747, the New Mexico Supreme Court held that where attorney's fees were authorized "to enforce covenants" in a lease, attorney's fees were authorized not only for the fees associated with their complaint, but also with defending against the tenants' counterclaim. *Id.* at 11. The Wyoming Supreme Court soon adopted an arguably more expansive rule on this issue. *See Barker v. Johnson*, 591 P.2d 886 (Wyo. 1979). In *Barker*, the parties entered into a sales contract that provided that if the seller "must bring an action to foreclose . . . or to collect any damages," the buyers would be responsible for "all costs" of the action including attorney's fees. *Id.* at 890. The buyers eventually sued the seller for specific performance; the seller answered and filed a counterclaim for possession and quiet title. Although the buyers prevailed in their claim for specific performance in the trial court, the trial court awarded the seller attorney's fees. *Id.* at 888. The Wyoming Supreme Court reversed the trial court, ruling in favor of the seller on the substantive merits of the claim. The court, however, affirmed the award of attorney's fees to the seller, despite the fact that the lawsuit was "instituted by the [buyers]" because the buyers' action "added to the necessity for [the seller] to obtain a decree quieting its title." *Id.*

Federal courts have adopted a similar rule. First, in *Exchange Nat. Bank of Chicago v. Daniels*, 763 F.2d 286 (7th Cir.), *on reh'g in part*, 768 F.2d 140 (7th Cir. 1985), the United States Court of Appeals for the Seventh Circuit held that attorney's fees associated with defending against counterclaims were authorized by the contract as costs to enforce the debt, as "the Borrowers' counterclaims . . . were integral to the 'enforcement' of the note, and that the other litigation commenced by the Borrowers was designed to frustrate the enforcement of the note." *Id.* at 294.

Again, the situation was reversed and the rule somewhat expanded in *Duryea v. Third Nw. Nat. Bank of Minneapolis*, 606 F.2d 823 (8th Cir. 1979). In *Duryea*, the United States Court of Appeals for the Eigth Circuit agreed with the district court that attorney's fees were authorized to the defendant creditor where attorney's fees were authorized by the contract as "costs of collection." *Id.* at 826. As the Court explained:

> If the Bank had instituted suit to collect the note and plaintiff had, by way of counterclaim, served the complaint that is the basis of this action, all costs of both bringing suit and defending against the counterclaim would be "costs of collection" of the note. *See Taylor v. Continental Supply Co.*, 16 F.2d 578 (8th Cir. 1926). This court sees little difference where plaintiff brings suit to prevent collection of the note. Because it is necessary for the Bank to defend against such an action in order to collect on the note,

- 13 -

attorney's fees incurred in defending against plaintiff's suit are a "cost of collection" as that term is used in the note. A contrary result would permit the maker of a note by winning the "race to the courthouse" to coerce settlement. This would render the "cost of collection" provision of little value, apparently contrary to what the parties to the note intended.

*Id.* (quoting the district court with approval). District courts considering the above opinions describe them as creating as a rule allowing the recovery of attorney's fees where the debtor's action has "been brought as a roadblock to collection" on the debt. ***Kennington Ltd., Inc. v. Wolgin***, No. CIV. A. 89-0080, 1989 WL 83556, at *3 (E.D. Pa. July 28, 1989). As the district court explained, without such a rule, "costs of defense would be made to depend on which party files first ('the race to the courthouse'), an arbitrary and undesirable result." ***Id.***

State courts have relied on the federal precedent to reach similar conclusions. *See* ***State Bank of Cokato v. Ziehwein***, 510 N.W.2d 268, 270 (Minn. Ct. App. 1994) ("For example, where a debtor sued a creditor to prevent collection and the creditor successfully counterclaimed for the amount due, the creditor was entitled to recover attorney fees incurred in both defending the debtor's claim and prosecuting the counterclaim as 'costs of collection.' Similarly, where a debtor brought a counterclaim which, if successful, would have reduced the amount due under the note, the creditor was entitled to fees related to its action on the note as well as fees for the counterclaim.") (citations omitted) (citing ***Duryea***, 606 F.2d at 826). *But see* ***Carefree Foliage, Inc. v. Am. Tours, Inc.***, 153 Ill. App. 3d 190, 196, 505 N.E.2d 1039, 1043 (1987) (holding that the ***Daniels*** rule only applies when the contract provides for attorney's fees related to both "collection" and "enforcement" of the debt); *see also* ***Kaiser v. Olson***, 105 Ill. App. 3d 1008, 1017, 435 N.E.2d 113, 120 (1981) (holding that "some language more express than 'costs of collection' should have been employed to have placed the party charged on notice that he was undertaking to protect the obligee from costs incurred in defending against a separate claim and not just the ordinary collection expenses in recovering upon a defaulted promissory note").

Keeping the above authority in mind, we again turn to the language of the CCRs at issue here. *See* ***Sutton v. First Nat'l Bank of Crossville,*** 620 S.W.2d 526, 530 (Tenn. Ct. App. 1981) (holding that, in general, the written terms control interpretation of a contract). As previously stated, the CCRs expressly provide that the Association may recover its attorney's fees when the Association "bring[s] an action at law" related to unpaid assessments. This language is both broad and vague. *Black's Law Dictionary* defines "bring an action" as "[t]o sue; institute legal proceedings." *Black's Law Dictionary* 219 (9th ed. 2009). The contract therefore simply states that where such an action is brought against a homeowner obligated to pay assessments, the Association may recover its attorney's fees; neither the terms "collection" nor "enforcement" are included

in this provision. Clearly, here the Association did institute legal proceedings against Homeowner, albeit in the posture of counter-plaintiff.

The language of this provision, however, should not be read in isolation but must be construed in light of the contract as a whole. ***Fisher v. Revell***, 343 S.W.3d 776 (Tenn. Ct. App. 2009) (quoting 77 C.J.S. *Contracts* § 304) ("[In interpreting a contract,] the whole instrument must be considered, and not an isolated part, such as a single sentence or paragraph. The language in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract."). Elsewhere in the contract the Association's right to enforce the terms of the CCRs is discussed. Article XII General Provision Section 3 expressly discusses enforcement of the CCRs and states that "[t]he expense of enforcement by the Association shall be chargeable to the Owner of the Lot violating these covenants and restrictions and shall constitute a lien on of the Lot, collectible in the same manner as assessments hereunder."

We agree with Homeowner that a contract providing only that a party is entitled to recover "costs" and "expenses" does not authorize the award of attorney's fees. *See* ***Cracker Barrel***, 284 S.W.3d at 310 ("The term 'costs' has not generally been construed to encompass attorney fees."); ***Nyrstar Tennessee Mines-Strawberry Plains, LLC v. Claiborne Hauling, LLC***, No. E2017-00155-COA-R3-CV, 2017 WL 5901017, at *2 (Tenn. Ct. App. Nov. 29, 2017) (holding that a provision allowing for "expenses" or even "legal expenses" did not authorize an award of attorney's fees). Such is not the case here. In this case, while the "expense of enforcement" provision of the CCRs does not expressly contain an attorney's fees provision, this provision explicitly references the manner in which assessments are collected. The provision regarding collection of assessments expressly provides that the Association may recover its attorney's fees when its provisions are met, *i.e.,* when an action is brought. Reading the contract as a whole, as we must, we conclude that the contract provides for collection of attorney's fees and costs where the Association "bring[s]" an action for collection of assessments and enforcement of the terms of the CCRs.

Further, we conclude that all actions taken in this particular case, including the action of defending against Homeowner's complaint, fall within the ambit of the CCRs' attorney's fee provision. The constellation of facts shown at trial demonstrate that this collection action was initiated by the mailing of a letter pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. 1692(g). Thereafter, Homeowner filed the instant action whose primary goal was to rescind the lien placed on his property for the unpaid assessments and be awarded damages that allegedly resulted from the lien. In support of that relief, Homeowner testified at trial that the assessments were invalid because he was not provided sufficient information to determine the proper calculation of the assessments. Homeowner's claim that the lien should be rescinded therefore rested on his claim that assessments upon which the lien was based were invalid. Moreover, the trial

court made an express finding, based upon Homeowner's own testimony, that the gravamen of Homeowner's lawsuit has always been to avoid payment of the assessments.[5] This finding, coupled with Homeowner's decision to file this lawsuit shortly after receiving the debt collection letter, supports our conclusion that Homeowner's lawsuit was an effort "to frustrate the enforcement of the [CCRs]." *Daniels*, 763 F.2d at 294.

Here, it was necessary for the Association to respond to Homeowner's claim in order to obtain relief on its counterclaim to collect on the assessments; stated differently, had Homeowner succeeded in showing that the assessments were in some way invalid, the Association would likely not have prevailed on its claim to collect the unpaid assessments. The same is true regardless of which party actually filed suit first. To hold otherwise would be to exalt form over function and reward parties for winning the race to the courthouse in violation of Tennessee's long-settled public policy. *See Word v. Metro Air Serv's, Inc.*, 377 S.W.3d 671, 675 (Tenn. 2012) (citing *West v. Vought Aircraft Indus., Inc.*, 256 S.W.3d 618, 622 (Tenn. 2008)) (noting that a race to the courthouse protocol "engages attorneys in the undignified spectacle of literally racing to secure perceived procedural advantages."); *Watson v. Watson*, 658 S.W.2d 132, 134 (Tenn. Ct. App. 1983) (rejecting the argument that plaintiff had priority in boundary dispute "simply because [plaintiff] 'won the race to the courthouse' irrespective of the actual intent of any of the parties to either conveyance.").

Based on the foregoing, we conclude that the trial court did not err in holding that the CCRs provided for an award of attorney's fees that arose not only out of prosecution of the Association's counterclaim, but also with regard to defending against the claims contained in Homeowner's complaint. Nothing in Homeowner's brief on appeal can be construed as arguing that the fees awarded by the trial court were unreasonable under the circumstances. As such, the decision of the trial court to award the Association $28,372.06 in attorney's fees is affirmed.

## CONCLUSION

The order of the Shelby County Chancery Court awarding Brunswick Forest Homeowners Association its attorney's fees and costs is affirmed. Costs of this appeal are taxed against the Appellant, Steven H. Parker, for which execution may issue if necessary.

---

[5] Arguably, such a finding, rendered by the trial court following a trial on the merits, is entitled to a presumption of correctness and will not be overturned unless the evidence preponderates otherwise. *Turner v. Turner*, 473 S.W.3d 257, 269 (Tenn. 2015) (citing Tenn. R. App. P. 13(d). The evidence does not preponderate against the trial court's characterization of Homeowner's claims.

_____

J. STEVEN STAFFORD, JUDGE